RAYMOND LOWRY v. H. H. KNEELAND AND ANOTHER. UNIVERSAL UNDERWRITERS INSURANCE COMPANY, THIRD-PARTY DEFENDANT, APPELLANT.

117 N. W. (2d) 207.

September 21, 1962—No. 38,579.

538

*Mordaunt, Walstad, Cousineau & Hagglund,* for appellant.
*King & MacGregor* and *Thomas J. Burke,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order of the trial court denying a motion of third-party defendant for summary judgment. The questions involved were certified by the court as important and doubtful, thereby making the order appealable.

The facts are not seriously in dispute. E. W. Boyer is part owner of Mitchell Boyer, Inc., a Lincoln-Mercury dealership. On February 24, 1959, Boyer and his wife were to fly to a meeting of automobile dealers in Las Vegas, Nevada, and, after completion of the meeting, were to continue on to Hawaii for a vacation. H. H. Kneeland is a longtime friend of Boyer, and on occasion Boyer has consulted with him about some business activities. Kneeland is not connected with the Mitchell Boyer corporation as stockholder or director. Customarily, Boyer would have his son-in-law take him to the airport, but on the day in question his son-in-law was to attend a breakfast meeting of automobile dealers so Boyer asked Kneeland if he would drive the Boyers to the airport in a company-owned automobile and then return the automobile to the garage. The automobile to be used was a demonstrator and was for sale, and it was necessary to return it to the garage after the trip. The exact hour during which it was to be returned to the garage was left up to Kneeland. He was to call the garage and ascertain when someone could return him to his home or wherever he wanted to go after taking the car back.

Pursuant to this arrangement, Kneeland and his wife drove to the Boyer home, where they left their own automobile, and, in the car

owned by Mitchell Boyer, Inc., with Kneeland at the wheel, drove the Boyers to the airport. Kneeland then returned to the Boyer home, where Mrs. Kneeland picked up their car, and they both returned to the Kneeland home. After spending about 35 to 40 minutes there, having called the garage and arranged for someone to drive him back to his home, Kneeland started for the garage. En route there, he collided with an automobile in which plaintiff was a passenger.

An action was commenced by plaintiff against Mitchell Boyer, Inc., and Kneeland. Answer was interposed by appellant as the insurer on the garage liability insurance policy carried by Mitchell Boyer, Inc., in behalf of the corporation, but it declined to represent Kneeland on the ground that he was not within the coverage of the policy as an insured. Thereupon appellant was brought in as a third-party defendant. Depositions were taken of Kneeland and Boyer, and, based on the depositions, pleadings, and an affidavit, a motion was made by appellant for summary judgment on the third-party complaint.

The policy of insurance carried by Mitchell Boyer, Inc., is one of restricted liability. The provision of the policy giving rise to the present dispute is found in an endorsement attached to the policy and enables the company to procure insurance at a reduced rate. It reads as follows:

"The unqualified word 'insured' includes the named insured and also includes (1) any partner, employee, director or stockholder thereof while acting within the scope of his duties as such, and any person or organization having a financial interest in the business of the named insured covered by this policy, and (2) any partner or employee or director or stockholder thereof or a member of the household of the named insured or such partner or employee or director or stockholder, while using an automobile covered by this policy or when legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and (3) any other person or organization legally responsible for the use thereof only while such automobile is operated by the named insured or any such partner or employee or director or stockholder or member of the household of the named insured or partner or employee or director

or stockholder, provided the actual use of the automobile is by the named insured or with his permission."

It is the position of appellant that Kneeland is not an employee of Mitchell Boyer, Inc., and therefore does not qualify as an insured within the terms of the policy. It is admitted that he does not come under the other provisions as a partner, director, or stockholder of the company. It is likewise admitted that he is not a paid employee. The trial court held that a fact issue at least existed whether Kneeland could be considered an employee within the meaning of this insurance policy. The court also held that, even if he is not an employee, coverage might still be found within clause (3) of the quoted portion of the policy in that it could be said that Boyer, even though not present in the automobile himself, was the operator thereof.

■ We have frequently held that words used in contracts of insurance, like any other contract, must be given the meaning they ordinarily convey to the popular mind and that, in the absence of ambiguity, they must be given their plain, ordinary, and popular meaning.[1]

In the recent case of Simon v. Milwaukee Auto. Mutual Ins. Co. 262 Minn. 378, 385, 115 N. W. (2d) 40, 45, we said with respect to the rule that a contract of insurance must be construed most strongly against the insurance company who chose the language of it:

"* * * This rule is limited, however, by another rule. Where the insurance contract is unambiguous, the language used must be given its ordinary and usual meaning the same as any other contract, and we have no more right to redraft an insurance contract under the guise of strict construction to reach a result that we would prefer than we have to redraft any other contract."

■ The term or word "employee," like many others frequently encountered in attempting to construe an insurance contract, or other contracts, apparently defies exact definition. On the face of it, it would

---

[1]Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N. W. (2d) 855, 50 A. L. R. (2d) 108; White v. Gifis (D. Minn.) 172 F. Supp. 296; 4 Dunnell, Dig. (3 ed.) §§ 1816 to 1827.

seem to be unambiguous, but, considered in its context with a contract of one kind or another, it is apparent that it may have differing meanings. To an ordinary person it probably means someone who is hired or employed for a particular period of time, but it is obvious that such a restricted meaning cannot apply to all cases. It is possible for a word to convey to an ordinary layman a meaning quite different from a legal meaning which it may have acquired by usage, and, if it is given its legal meaning in drafting legal documents, it is reasonable to assume that the parties intended it to have that meaning. After all, the cardinal rule of construction of any instrument is to ascertain the intent of the parties from the language which they have chosen to use. It is obvious that here the word "employee" might well have acquired a different legal meaning from that which ordinarily would be given it by people not versed in the use of legal language.

■ It is elementary that if there is doubt as to its meaning it must be construed most strongly against the one who chose the language in drafting the instrument.[2]

■ While appellant contends that neither Kneeland nor Boyer considered Kneeland was an employee of Mitchell Boyer, Inc., their concept of the meaning of the word may not be conclusive. Kneeland did testify that he never considered himself an employee of Mitchell Boyer, Inc., or of E. W. Boyer individually.

The relationship between Kneeland and Mitchell Boyer, Inc., must have been that of bailor-bailee, master and servant, principal and agent, employer and employee, or an independent contractor. It seems quite clear that the term "employer and employee" is an outgrowth of and synonymous with master and servant, at least in the context used here. In 35 Am. Jur., Master and Servant, § 2, we find the following:

"* * * The words 'employer' and 'employee' are the outgrowth of the old terms 'master' and 'servant;' they have been adopted by reason of the shift of the relation in general from a personal to an impersonal one, and are the terms now commonly used to describe the relation-

---

[2]Cement, Sand & Gravel Co. v. Agricultural Ins. Co. 225 Minn. 211, 30 N. W. (2d) 341; 9 Dunnell, Dig. (3 ed.) § 4659.

ship. The relationship of employer and employee is the same as that of master and servant. * * * The term [servants] is synonymous with 'employees.' The latter may sound more euphonious than 'servants,' but there is no necessary distinction or any substantial difference between the two."

In Frankle v. Twedt, 234 Minn. 42, 47 N. W. (2d) 482, we had occasion to consider the question whether the negligence of a driver of a car was imputed to the owner of the car so as to bar his right of recovery under circumstances not too unlike those found in the instant case. With respect to the relationship of master and servant we said (234 Minn. 47, 47 N. W. [2d] 487):

"* * * A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of such service is controlled *or is subject to the right of control* by the master. Restatement, Agency, § 2. As applied to automobiles, the difference between a mere bailment relation and that of master and servant is the distinction . between a mere permissive use and a use which is subject to the control of the master and connected with his affairs."

We equated the relationship of the two parties in that case to that of a chauffeur for the owner of a car. Even though a person might be driving the car for the owner's business when the owner was not present, he still would be a servant of the master, or an employee. That is true here if the other requirements for establishing a relationship of employer and employee are present.

If Kneeland had been paid by Mitchell Boyer, Inc., for performing the services he did, we assume that no one would quarrel with the fact that he was an employee within the meaning of this insurance policy. While compensation is a factor to be considered in determining whether the employer-employee relationship exists, it is not conclusive. The relationship may be found to exist even though the employee neither expects nor may demand compensation.[3]

---

[3] 35 Am. Jur., Master and Servant, § 12; 56 C. J. S., Master and Servant, § 2e; Pennsylvania Cas. Co. v. Elkins (E. D. Ky.) 70 F. Supp. 155.

Restatement, Agency (2 ed.) § 225, reads:

"One who volunteers services without an agreement for or expectation of reward may be a servant of the one accepting such services."

As an illustration we find the following (illustration 1):

"A, a social guest at P's house, not skilled in repairing, volunteers to assist P in the repair of P's house. During the execution of such repair, A negligently drops a board upon a person passing upon the street. A may be found to be a servant of P."

In Frankle v. Twedt, *supra,* we also recognized the fact that a master-servant relationship might exist even if the servant was performing services for the master gratuitously.

Here, there is no question but that the car was being driven for the benefit of Boyer, an officer of Mitchell Boyer, Inc., and, as such, the services were for the benefit of the corporation.

Cases from other jurisdictions dealing with this subject are of little help. It seems that, where it has been for the benefit of the insured to construe the word so as to permit recovery, the term "employee" has been held to exclude the existence of that relationship and at other times, when it was to the benefit of the insured to hold the opposite, that has been done. Consequently, two lines of cases have emerged. In the following it has been held that "employee" did not include one who occupied a position analogous to that of Kneeland in the instant case: Bean v. Gibbens, 175 Kan. 639, 265 P. (2d) 1023; Braley Motor Co. v. Northwest Cas. Co. 184 Wash. 47, 49 P. (2d) 911; Stephanelli v. Yuhas, 135 Pa. Super. 573, 7 A. (2d) 124.

To the contrary, see Fidelity & Deposit Co. of Maryland v. Friedlander (6 Cir.) 101 F. (2d) 106; Sherman v. O'Sullivan (La. App.) 164 So. 343.

White v. Gifis (D. Minn.) 172 F. Supp. 296, involved a situation where two parties were driving an automobile to California for one who was purchasing cars in Minnesota and selling them in California. En route, one of the occupants of the car was injured as a result of the alleged negligence of the driver of the car, and the question arose whether he was an employee of the one for whom the cars

were being driven. The court found that under the circumstances of that case he was an independent contractor as distinguished from an employee. We believe that holding is not inconsistent with a holding in the present case that Kneeland was an employee of Mitchell Boyer, Inc., for the reason that in the White case the automobile was really being driven for the benefit of those who were driving it more than for the owner of the car. In this case, the services were entirely for the benefit of Boyer as an officer of Mitchell Boyer, Inc.

In Orth v. Universal Underwriters Ins. Co. (9 Cir.) 284 F. (2d) 857, provisions of an insurance policy identical with those now before us were before the court, but the question there was whether a prospective buyer who had an accident while taking a test drive of a car was covered under clause (3) rather than whether he was an employee. Similar questions arose in Robbins v. Greene, 43 Wash. (2d) 315, 261 P. (2d) 83, and State Farm Mutual Auto. Ins. Co. v. Smith (W. D. Mo.) 48 F. Supp. 570. In view of our construction of the word "employee," it is not necessary to consider that question.

We are convinced that, applying the usual rules that the terms of an ambiguous contract should be construed against the insurer, we must give to the word "employee" a broad enough meaning within this policy to encompass one engaged, as was Kneeland, in performing a service for the insured even though such service was of a temporary duration and uncompensated.

Affirmed.

OTIS, JUSTICE (dissenting).

I agree with the Chief Justice that the words of an insurance policy must be given the plain meaning they ordinarily convey to the popular mind, but I have difficulty in finding that his interpretation of the word "employee" gives effect to the intention of the parties to the contract.[1] I think it is significant that the word "employee" is here included among four classes of persons who may be connected with the insured corporation, namely, "any partner, employee, director or stockholder." Partners, directors, and stockholders have definite and

---

[1]Bobich v. Oja, 258 Minn. 287, 294, 104 N. W. (2d) 19, 24.

specific legal relationships with the company, with clearly defined rights and duties, and a substantial and continuing connection with the company's affairs. The fact "employee" is blanketed into this group in my opinion indicates an intent to define a status which is somewhat less nebulous than that of a person who, as a courtesy to an old friend, agrees to see him off at the airport on a trip to Hawaii via a convention at Las Vegas, and consents to return to the owner's garage a car which the company officer was using. This is not the concept of "employee" which I believe first springs to the popular mind.

In Frankle v. Twedt, 234 Minn. 42, 47 N. W. (2d) 482, there was quid pro quo for the driver's use of the car, and the problem to be resolved did not involve the construction of a written contract. That decision simply drew the line beyond which the court refused to immunize a bailor from the contributory negligence of his bailee.

I feel the meaning of the word "employee" should not be distorted to effect a purpose which the laymen who entered the contract quite obviously did not intend. There is nothing in the word "employee" which in itself creates an ambiguity. What was said in State ex rel. Gorczyca v. City of Minneapolis, 174 Minn. 594, 219 N. W. 924, is more persuasive to me than the reasoning of cases which merely reach for a construction that will hold the insurance company liable. In that case we stated (174 Minn. 596, 219 N. W. 925):

"The term 'employe' is defined in the dictionaries as one employed by another; a clerk or workman in the service of an employer. The term has been defined as one who works for a salary or wages. * * * The word implies continuity of service, regular and continual service."

However, in finding there was coverage under a clause which excluded "employees" from a liability insurance policy, the Kansas court has held that a decedent, who had consented to tow defendant's truck when he was killed, was performing an occasional, incidental, casual, and neighborly act, and was not an employee in so doing. Bean v. Gibbens, 175 Kan. 639, 265 P. (2d) 1023. In my opinion, this precisely describes Mr. Kneeland's situation at the time of his accident. See, also, Braley Motor Co. v. Northwest Cas. Co. 184

Wash. 47, 49 P. (2d) 911. Recently Judge Nordbye had occasion to construe the word "employee" in a policy similar to the one here under consideration. White v. Gifis (D. Minn.) 172 F. Supp. 296, 298. He there stated:

"* * * It is true that the Minnesota Supreme Court has found in various instances that the master and servant relationship was present where control or the right to control as a practical matter was slight. Frankle v. Twedt, 1951, 234 Minn. 42, 47 N. W. 2d 482; Tschida v. Dorle, 1952, 235 Minn. 461, 51 N. W. 2d 561. However, we are dealing with the term 'employee' as used in an insurance contract and the words of an insurance contract must generally be given the meaning that they ordinarily convey to the popular mind."

The court then held that under an insurance policy which excluded employees, a person who drove a car from Minnesota to California was not an employee of the owner under an arrangement which simply permitted the owner to have his vehicle transported without cost and the driver to secure an economical ride to the west coast.

In the absence of any clear-cut authority to the contrary, I am of the opinion the word "employee" should be construed in the sense in which it is usually understood in the business world, and that the decision of the lower court should therefore be reversed.

NELSON, JUSTICE (dissenting).
I concur in the dissent of Mr. Justice Otis.

ROGOSHESKE, JUSTICE (dissenting).
I concur in the dissent of Mr. Justice Otis.