MICHIGAN MUTUAL LIABILITY
COMPANY v. POKERWINSKI.

1. INSURANCE—UNINSURED MOTORISTS.

An automobile insured at the time of an accident is not made an "uninsured automobile" within the meaning of uninsured motorists provision of another insurance policy by the later insolvency of the insurer of the automobile.

2. SAME—AMBIGUITY IN POLICY—PRECEDENTS.

Ambiguity in an insurance policy provision arises, if at all, from the language claimed to be ambiguous, and cannot be shown by the fact that courts of other States have construed the provision diversely.

3. SAME—CONSTRUCTION OF POLICY.

No forced or strained meaning will be given words in an insurance policy, and a new contract will not be made for the parties under guise of construing the contract.

4. SAME—INSOLVENCY OF COMPANY.

Insolvency of insurance company after date of accident does not render an automobile uninsured within the meaning of uninsured motorists clause.

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 5] 7 Am Jur 2d, Automobile Insurance § 136.
  Rights and liabilities under "uninsured motorists" coverage, 79 ALR2d 1252.
[2, 3, 6] 29 Am Jur, Insurance § 245 et seq.

5. SAME — UNINSURED MOTORIST CLAUSE — DENIAL OF COVERAGE —
INSOLVENCY.

Insolvency, of an insurer, after an automobile it insures is in an
accident, *held*, not to be a denial of coverage within the mean-
ing of uninsured motorists provision of another insurance
policy, which provides insurance if the insurer of automobile
denies coverage.

6. WORDS AND PHRASES—PRECISION OF USAGE.

Language is law's tool and, while it is imprecise at best since
it is not mathematical, such precision as it has should not be
lightly sacrificed.

Appeal from Wayne; Burdick (Benjamin D.), J.
Submitted Division 1 May 2, 1967, at Detroit.
(Docket No. 2,966.)    Decided November 30, 1967.

Complaint by Michigan Mutual Liability Company
against Ray Pokerwinski and Richard Pokerwinski,
a minor, for declaratory judgment to determine
rights of defendants under uninsured motorists cov-
erage of insurance policy. Judgment for defend-
ants. Plaintiff appeals. Reversed and judgment
ordered entered for plaintiff.

*Johnson, Campbell & Moesta,* for plaintiff.

*Richard L. Kanner,* for defendants.

WEIPERT, J. Plaintiff, Michigan Mutual Liability
Company, appeals from a declaratory judgment
granted defendants below.

The controversy involved here is based upon an
insurance policy issued by plaintiff to defendants
on June 20, 1963. The policy contained an uninsured
motorists clause which provided:

"1. Damages for Bodily Injury Caused By Un-
insured Automobiles: The company will pay all
sums which the insured  *  *  *  shall be legally

entitled to recover as damages from the owner.or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom * * * sustained by the insured, caused by accident and arising from the ownership, maintenance or use of such uninsured automobile."

The policy defined an uninsured automobile as:

"(1) An automobile with respect to the ownership, maintenance or use of which there is * * * no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder."

Richard Pokerwinski, one of the insured defendants, was injured on August 10, 1963, in an automobile collision with a car driven by William D. Delaney. At that time William D. Delaney was insured for public liability and property damage by Banner Mutual Insurance Company. Defendants here initiated suit against the Delaneys in the Wayne county circuit court on July 14, 1964. Banner Mutual Insurance Company was liquidated and went into receivership in 1966; thereupon defendants discontinued the lawsuit against the Delaneys.

Subsequently, defendants filed a claim under the above-quoted uninsured motorists clause and submitted the claim to the American Arbitration Association. Appellant, Michigan Mutual Liability Company, instituted an action for declaratory relief in the Wayne county circuit court to determine whether appellees were covered under the uninsured motorists provision. The trial court, on these facts as stipulated by the parties and on briefs and oral

argument, ruled in favor of defendants' claim that they were covered by this clause. Michigan Mutual has appealed from this judgment.

In determining coverage or lack of coverage under this provision of the policy, the specific issue is whether William D. Delaney was driving an "uninsured automobile" within the meaning of the policy. Under the definition set out above, it is clear that an automobile can be uninsured in either of two ways. The first is by absence of a "bodily injury liability bond or insurance policy applicable at the time of the accident." Delaney did have such a policy on his automobile, and the policy was in effect on the date of the accident. Virtually identical language was construed under identical circumstances in *Topolewski* v. *Detroit Automobile Inter-Insurance Exchange* (1967), 6 Mich App 286. This Court held in that case that there was no ambiguity in the provision and that an automobile was not rendered "uninsured" after an accident by subsequent receivership and liquidation of the insurer. As to the first part of the definition involved here, *Topolewski* is controlling; the lower court's judgment cannot therefore be supported under the first part of the policy definition. See, also, *Rousso* v. *Michigan Educational Employees Mutual Insurance Company* (1967), 6 Mich App 444.

The definition considered in *Topolewski* did not, however, provide the alternative method for an automobile to qualify as "uninsured" that is presented by this case. The second way an automobile may be "uninsured" within the specific definition of the policy is where an insurer "denies coverage" on a policy which was in fact in effect at the time of the accident. Michigan Mutual asserts that a denial of coverage requires some express or affirmative action by the insurer; in support of this position,

the most persuasive cases are *Federal Insurance
Company* v. *Speight* (ED SC), 220 F Supp 90 and
*Pattani* v. *Keystone Insurance Company* (1966), 209
Pa Super 15 (223 A2d 899). Defendants, on the
other hand, claim that there is a denial under the
terms of the uninsured motorists provision when
there is a failure, for whatever reason, to supply
the contracted-for coverage. Defendants urge as
sustaining their view: *State Farm Mutual Auto-
mobile Insurance Company* v. *Brower* (1964), 204 Va
887 (134 SE2d 277) and *North River Insurance Com-
pany* v. *Gibson* (1964), 244 SC 393 (137 SE2d 264).
It is to be noted that the latter two cases are final
pronouncements by the highest courts of the respec-
tive States while of the first two cases, the Federal
decision construed the South Carolina law prior
to the now-controlling *North River Case* and the
Pennsylvania case is a decision by an intermediate
appellate court which is now before the Pennsyl-
vania supreme court.

Defendants assert that this is a case where the
language of the policy is open for construction by
the court since there was an ambiguity in the mean-
ing. They infer an ambiguity because courts of
other States have arrived at differing conclusions
as to the meaning of denial under an uninsured
motorists provision. The existence of ambiguity is
not shown in this manner. "Mere assertion of am-
biguity does not establish ambiguity; it arises, if
at all, from the language claimed to be ambiguous."
*Topolewski* v. *Detroit Automobile Inter-Insurance
Exchange, supra,* at 289. The language used here is
not to our minds ambiguous. The verb "to deny" is
not equated, in the common understanding, with
mere failure or inability: "denies" imports an af-
firmative refusal. Had coverage of an event such
as we have here been intended, it could have been

expressed easily by inserting some phrase like "failure to make the coverage effective, for whatever reason." We must accord to the words actually used their normal and natural meaning. As was held in *Edgar's Warehouse, Inc.,* v. *United States Fidelity & Guaranty Company* (1965), 375 Mich 598, 602:

"In *Sturgis National Bank* v. *Maryland Casualty Co.,* 252 Mich 426, wherein the language of a burglary policy was construed, this Court held, as it has done in prior and subsequent cases, that no forced or strained meaning will be given words in an insurance policy and that courts will not make a new contract for the parties under the guise of construing the contract."

Denial of coverage is not the same as the much broader expression "failure of coverage," which latter would include all cases of inability to collect full damages from an insurer. "Denies coverage" carries an affirmative connotation, such as rejection of a policy holder as an insured, or assertion that a policy does not cover a particular accident. In the present case the insurer never disclaimed liability or denied coverage. It did not pay for quite a different reason, its receivership and liquidation. True indeed the result is the same; but this does not justify judicial twisting of the English language.

To call a rose by a new, unappropriated name still leaves the external reality a member of the genus *Rosa;* by that method language grows and is enriched. To call a rose a buttercup would not change the reality either, but the expressive power of language would be diminished thereby—for if such became accepted usage, the noun could no longer identify which specific flower the speaker intended. The latter is the type of extension of meaning urged upon us by defendants. Courts should beware of making from hard cases not only bad law but bad

language.  Language is the law's tool, imprecise at best since it is not mathematical but employs the ever-changing vernacular.  What it has of precision should not lightly be sacrificed.  Changing common usage must be accepted of course, but as determined in the first instance by linguists and lexicographers, not by courts.

We hold accordingly that the insolvency and receivership of Banner Mutual, subsequent to the date of the accident, did not render William Delaney's car an "uninsured automobile" within the meaning of Michigan Mutual's uninsured motorists clause.

The judgment of the Wayne county circuit court is therefore reversed with the direction that judgment be entered in favor of Michigan Mutual Liability Company.  Costs to appellant.

LESINSKI, C. J., and J. H. GILLIS, J., concurred.