# ANNA FARKAS v. HARTFORD ACCIDENT AND INDEMNITY COMPANY.

173 N. W. (2d) 21.

December 12, 1969—No. 41791.

*Jardine, Logan & O'Brien* and *Gerald M. Linnihan,* for appellant.

*Schermer, Gensler, Schwappach, Borkon & Ramstead* and *John Mariani,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Rogosheske, JJ. Consideration and decision based on briefs by entire court en banc.

NELSON, JUSTICE.

Appeal by defendant, Hartford Accident and Indemnity Company, from a summary judgment entered in favor of plaintiff, Anna Farkas.

On March 5, 1965, an automobile operated by Thomas LeRoy Kanar struck plaintiff, a pedestrian. At the time of the accident, Kanar was insured against liability in the amount of $10,000 by United States Mutual Insurance Company. On August 20, 1965, plaintiff commenced an action against Kanar for personal injuries arising out of the accident. Kanar was defended by an attorney retained by United States Mutual. However, on February 15, 1966, United States Mutual was adjudged insolvent by order of the Ramsey County District Court and a receiver was appointed. Subsequently, the company-retained counsel withdrew from the case, which is still pending.

At the time of the accident, plaintiff was insured by a liability insurance policy issued by defendant insurance company, the premium thereon paid for by plaintiff's husband. The policy provided coverage against uninsured motorists and defined "uninsured vehicle" as one with respect to which there is no insurance applicable at the time of an accident or with respect to which there is insurance applicable at the time of an accident but the

insurer denies coverage.[1] Plaintiff brought this action seeking a declaratory judgment that Kanar was an uninsured motorist and that the automobile he was driving was an uninsured vehicle pursuant to the terms of the policy issued to plaintiff's husband, and for a further determination that plaintiff could proceed under such policy to recover damages.

Defendant has fully stated the issue on this appeal as follows:

"Does an automobile liability policy of insurance which provides uninsured motorist coverage and defines an uninsured vehicle as one with respect to which there is no insurance applicable at the time of the accident, or with respect to which there is a policy applicable at the time of the accident but the company writing the same denies coverage, provide coverage when the insured has an accident with a vehicle on which there is a policy

---

[1] Coverage D of the policy issued by defendant insurance company provided protection against uninsured motorists as follows: "The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration."

" '[U]ninsured highway vehicle' means:

"(a) a highway vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing same denies coverage thereunder * * *."

of insurance in force and effect at the time of the accident, but the company writing same subsequently becomes insolvent?"

On this issue the court below held in the affirmative.

1. In 1967, our legislature passed an uninsured motorist statute, Minn. St. 72A.149, effective January 1, 1968, requiring that all automobile liability policies issued contain an uninsured motorist endorsement. Section 72A.149, subd. 2, includes in the definition of "uninsured motor vehicle" an insured vehicle with respect to which the insurer thereof is unable to make payments because of insolvency. It would seem upon first consideration that § 72A.149 would adequately cover the case before us. However, in Baune v. Farmers Ins. Exch. 283 Minn. 54, 166 N. W. (2d) 335, a declaratory judgment action seeking to establish that a tortfeasor whose liability insurer became insolvent after the accident was an "uninsured motorist" within the meaning of plaintiff's insurance policy, this court held that § 72A.149, subd. 2, will not be applied retroactively. Therefore, the issue in this case must be resolved within the terms of the policy itself.

2. Basic to the issue on this appeal is the understanding that an insurance policy is a contract and the rights of the contracting parties are determined by the terms of the policy. It is a well-founded principle in Minnesota that since the language of an insurance policy is that of the insurer, any reasonable doubt as to its meaning must be resolved in favor of the insured. However, a court has no right to read an ambiguity into the plain language of a policy in order to provide coverage. Aetna Ins. Co. v. Getchell Steel Treating Co. (8 Cir.) 395 F. (2d) 12.

In giving effect to the intention of the parties, the words used must be understood in their ordinary and popular sense. LeRoux v. Edmundson, 276 Minn. 120, 148 N. W. (2d) 812; Lang v. General Ins. Co. of America, 268 Minn. 36, 127 N. W. (2d) 541; Lowry v. Kneeland, 263 Minn. 537, 117 N. W. (2d) 207; Bobich v. Oja, 258 Minn. 287, 104 N. W. (2d) 19; also, see, Annotation, 26 A. L. R. (3d) 883. In Simon v. Milwaukee Auto. Mutual Ins.

Co. 262 Minn. 378, 391, 115 N. W. (2d) 40, 49, where the meaning of the term "insured" was at issue, it was stated:

"* * * Much as we might dislike exclusionary clauses which may mislead the insured, an insurance policy is still a contract, and where its provisions are unambiguous the courts have no right to thrust upon the insurer a risk that it did not accept and for which it was not paid a premium. The contract rights of the parties must be determined from the language used in the contract where it is unambiguous, not from language the courts would like to read into the policy."

In the instant case, in order to allow recovery, an ambiguity must be found in either of the two portions of the policy definition of the term "uninsured highway vehicle." The first portion, namely, a vehicle with respect to which there is no insurance policy applicable at the time of the accident, involves no ambiguity and has been construed to render a vehicle not "uninsured" if subsequent to the accident the insurer becomes insolvent. See, Baune v. Farmers Ins. Exch. *supra;* Apotas v. Allstate Ins. Co. (Del.) 246 A. (2d) 923; Dreher v. Aetna Cas. & Surety Co. 83 Ill. App. (2d) 141, 226 N. E. (2d) 287.

Where, as here, the definition of "uninsured highway vehicle" in a statute or insurance policy includes the situation in which the insurer denies coverage, there is a split of authority with regard to the effect of insolvency of the insurance company on recovery under the policy. One view holds that insolvency of the insurer subsequent to the time of the accident will render the vehicle uninsured since this represents a "denial" of coverage; the other view holds that insolvency will not render the vehicle uninsured since "denial" of coverage requires an affirmative act on the part of the insurer.

The one view, holding that mere insolvency of the insurer does not result in a denial of coverage, is based on the proposition that to "deny coverage" requires some *affirmative* act on the part of the insurer, such as rejecting the policyholder as an insured,

or asserting that the policy does not cover a particular accident. Courts holding this view base their decisions on contract law, reasoning that the insurer's inability to defend due to insolvency is a breach of contract rather than a denial of liability. To hold that a denial of liability is involved, say the courts, would be to rewrite the contract, a function not within the court's province. See, Michigan Mutual Lia. Co. v. Pokerwinski, 8 Mich. App. 475, 154 N. W. (2d) 609; Seabaugh v. Sisk (Mo. App.) 413 S. W. (2d) 602.

The other view is that under a policy defining an uninsured vehicle to include one with respect to which the insurer denies coverage, a motorist whose insurer becomes insolvent subsequent to the accident is thereby rendered uninsured. Under this view insolvency of an insurance company is just as effective to deny coverage as an affirmative denial of coverage.

Thus, in North River Ins. Co. v. Gibson, 244 S. C. 393, 137 S. E. (2d) 264, the court held that an insurer effectively denies coverage when he withdraws from the defense of the action by reason of insolvency. The court ruled that the amendment to the statute which included the situation where the insurer becomes insolvent had the effect of clarifying rather than broadening the coverage afforded by the statute.

In State Farm Mutual Auto. Ins. Co. v. Brower, 204 Va. 887, 134 S. E. (2d) 277, the court, in holding that a vehicle was uninsured, stated that there was nothing in the statute that required the denial of coverage to be expressly stated. The court reasoned that an insurer denies coverage to its insured when it fails or refuses to afford him the protection it contracted to give. See, also, Katz v. American Motorist Ins. Co. 244 Cal. App. (2d) 886, 53 Cal. Rptr. 669.

Finally, in Stephens v. Allied Mutual Ins. Co. 182 Neb. 562, 568, 156 N. W. (2d) 133, 138, the court, in holding that an insurer denies coverage when it becomes insolvent, stated:

"* * * We feel that when an insurer fails to defend a claim or to satisfy a judgment against its insured, whether *voluntarily*

*or involuntarily,* it 'denies coverage' in the only meaningful sense of the term. Realistically, an injured person is as unprotected by a tort-feasor insurance carrier who has become insolvent prior to the satisfaction of his claim just as much as is the person injured by a tort-feasor who has no insurance at all. We therefore hold that the insolvency of a tort-feasor's carrier occurring subsequent to the accident, with a consequent refusal or inability of the carrier to defend or pay a judgment or claim resulting therefrom for which the tort-feasor has become liable, constitutes a 'denial of coverage' within the meaning of such provision in the uninsured motorist clause of the insured's policy."

The determinative factor is, therefore, as pointed out by the above cases, that the insurance companies involved did not accord the protection they contracted to give. Such failures all resulted in a denial of coverage within the definition of uninsured motor vehicle.

3. However, as defendant correctly points out, all of the cases which conclude that the insurer "denies coverage" where it becomes insolvent subsequent to the accident were decided in jurisdictions in which there existed an uninsured motorist statute. Such statutes establish a public policy that "every insured is entitled to recover damages he or she would have been able to recover if the offending motorist had maintained a policy of liability insurance in a solvent company capable of responding for damages duly adjudicated against its insured." Stephens v. Allied Mutual Ins. Co. 182 Neb. 562, 569, 156 N. W. (2d) 133, 138. This factor was pointed out in Seabaugh v. Sisk (Mo. App.) 413 S. W. (2d) 602, 609:

"However, none of the cited cases reflecting judicial efforts to implement and attain statutory objectives reach or rule our case. For, in Missouri uninsured motorist coverage is permissive and has not been a subject of special legislative attention and action; and, in the absence of inhibition by statute or public policy, the parties to an insurance policy are free to make their

own contract containing such provisions as the contracting parties are willing to accept and adopt."

If this court were to adopt the rule that, in the absence of statute, a definition in an insurance policy providing that denial of coverage renders a vehicle uninsured includes the situation when the insurer becomes insolvent subsequent to the time of the accident, it would become the only known jurisdiction to so rule.

At the time plaintiff had her accident, Minnesota did not have a public policy expressed by statute regarding uninsured motorist coverage. Therefore, there was nothing to require that an insurance company extend coverage beyond the terms of its insurance contract. Furthermore, since this court has not interpreted the term "denies coverage" to include the situation in which the insurer becomes insolvent after the accident, we reach the conclusion upon the record and the authorities cited that Kanar's automobile at the time of his accident with plaintiff was not an "uninsured highway vehicle" under the terms of the policy of insurance issued by defendant insurance company.

We therefore reverse and order the judgment in favor of plaintiff vacated and that judgment in favor of defendant be entered.

Reversed.

MURPHY, JUSTICE (dissenting).

When because of insolvency there is no effective coverage, I would hold that the uninsured motorist endorsement is applicable and that § 72A.149 should be construed to clarify that interpretation rather than expressing a new right.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.