## HAROLD P. FISCHER v. FARMERS INSURANCE EXCHANGE.

224 N. W. 2d 136.

November 15, 1974—No. 44484.

*Schermer, Scwappach, Borkon & Ramstead, William Seltz,* and *Richard I. Diamond,* for appellant.

*Rider, Bennett, Egan, Johnson & Arundel, David F. Fitzgerald,* and *Richard H. Krochock,* for respondent.

Heard before Kelly, Scott, and McRae, JJ., and reconsidered and decided by the court en banc.

KELLY, JUSTICE.

This is a declaratory judgment suit, brought after the commencement of a personal injury action, in which plaintiff seeks to establish that the tortfeasor was an "uninsured motorist" within the meaning of plaintiff's own insurance policy by virtue of the insolvency of the tortfeasor's liability carrier. The matter was tried without a jury, and plaintiff appeals from the judgment entered against him. We reverse.

On February 27, 1965, plaintiff, Harold Fischer, was involved in an automobile accident with one Gary Kornell. In May 1965, plaintiff commenced a personal injury action against Kornell who was insured at the time of the accident by American Allied Insurance Company (AAIC). During the pendency of that action, on August 4, 1965, AAIC was enjoined from doing business in the state of Minnesota and was placed in receivership. An offer of settlement was made by the receiver, but was rejected, and plaintiff later obtained a $7,500 default judgment. Plaintiff thereafter commenced this action against Farmers Insurance Exchange, his own insurer, alleging that as a result of the insolvency of AAIC, Kornell was an uninsured motorist and plaintiff is therefore entitled to coverage under the following uninsured-motorist provisions of his own policy:

"[The Exchange agrees with the insured to] pay all sums * * * which the owner or the operator of an uninsured motor vehicle would be legally responsible to pay as damages to the insured because of bodily injury sustained by the insured, caused by accident, and arising out of the ownership, maintenance or use of such uninsured motor vehicle * * *."

"* * * '[U]ninsured motor vehicle' means a motor vehicle with respect to the ownership, maintenance, or use of which there is no bodily injury liability insurance or bond applicable at the time of the accident * * *."

The trial consisted solely of the testimony of Mr. Homer Bonhiver, court-appointed receiver for AAIC. The thrust of

plaintiff's case was that AAIC was insolvent at all times, and specifically on the date of the accident. Therefore, coverage was not "applicable at the time of the accident" or actually available for the use of the injured plaintiff, constituting the tortfeasor an uninsured motorist within the meaning of the uninsured-motorist provision of plaintiff's policy. Defendant, on the other hand, argues that an insured has a liability insurance policy applicable at the time of the accident, precluding uninsured-motorist coverage, so long as he has a policy of insurance in force at that time issued by a company then doing business.

It should be noted that the legislature has extended uninsured-motorist coverage to an injured party where the tortfeasor's liability carrier subsequently becomes insolvent.[1] That statute was not in effect at the time of the accident and this case must be decided solely on the basis of the language in the policy itself.

The policy definition of "uninsured motor vehicle" as a vehicle with respect to which there is no insurance applicable at the time of the accident involves no ambiguity and has been held not to extend uninsured-motorist coverage in the event of insolvency of the insurer subsequent to the accident. See, Baune v. Farmers Ins. Exch. 283 Minn. 54, 166 N. W. 2d 335 (1969); Farkas v. Hartford Acc. & Ind. Co. 285 Minn. 324, 173 N. W. 2d 21 (1969). In both Baune and Farkas this court addressed itself to the situation in which the insolvency occurred after the accident. Plaintiff argues that the opposite result should obtain where insolvency is actually present prior to the accident. We agree. The determinative question is whether there was "applicable" at the time of the accident such insurance as would preclude liability under the uninsured-motorist endorsement of plaintiff's policy.

The word "applicable" is defined in Webster's Third New International Dictionary (1961), p. 104, as (1), capable of being applied, having relevance; (2), fit, suitable, or right to be applied; appropriate. The whole thrust of the uninsured-motorist

---

[1] Minn. St. 65B.22, subd. 4 (formerly numbered 72A.149, subd. 2).

coverage insurance centers upon this language of the policy: "[The Exchange agrees with the insured to] pay all sums * * * which the owner or operator of an uninsured motor vehicle would be legally responsible to pay as damages * * *." In this context, is the tortfeasor's insurance policy "capable of being applied" or "fit" or suitable or appropriate, for the main purpose of paying "all sums" (subject to policy limitations) which the tortfeasor would be "legally responsible to pay as damages" where that insurance company was insolvent at the time of the accident?

The trial court made no finding as to the solvency or insolvency of the tortfeasor's insurance company as of the time of the accident. Presumably this fact question was not decided because the trial court concluded that it was not necessary to a decision in the case because that court could and did make the following finding:

"That at the time of the occurrence of said accident, and until August 4, 1965, the American Allied Insurance Company maintained offices and agents, was writing policies of insurance and issuing policies for bodily injury liability coverages, was conducting investigations of accidents covered under its policies, affording defense of claims against its insureds arising therefrom and generally conducting its business as usual within the State of Minnesota."

However, we take a different view of the law under the facts in this case and have concluded that the insolvency of that insurance company was relevant. We are not persuaded under the circumstances in this case, where plaintiff obtained a default judgment which was not paid in the ordinary course of business by the tortfeasor's insurer and that insurer was insolvent at the time of the accident, that there was insurance "applicable at the time of the accident."

Mr. Bonhiver, the receiver of Allied, testified that at the time of the accident, February 27, 1965, the company was insolvent,

that its liabilities exceeded its assets, and that there was not enough cash to take care of demands as they fell due. On the date the receiver was appointed, August 5, 1965, its liabilities exceeded its assets by at least $2 million. Where the tortfeasor's insurance company was in this kind of financial situation, we conclude that its policies were not fit, suitable, and appropriate for the purposes of uninsured-motorist coverage.

The receiver also testified that subsequent to his appointment, recoveries were made by the receiver on behalf of Allied against others for fraud, on fidelity bonds of officers, and on reinsurance. As a result, approximately 75 percent had been paid on the evaluated claims and the receiver testified that payment could probably exceed 90 percent. These recoveries subsequent to the accident would hardly make the policy in question fit, suitable, or appropriate at the time of the accident.

The case is remanded with directions that findings should be made as to the insolvency of Allied at the time of the accident and if a finding of insolvency is made, such other findings, conclusions of law, and order for judgment as may be appropriate and consistent with this opinion.

Reversed and remanded.