HORACE MANN INSURANCE
COMPANY, Respondent,

v.

INDEPENDENT SCHOOL DISTRICT
NO. 656 and Fireman's Fund Insurance
Company, Appellants, (C2–83–936, C5–
83–1207),

Security Insurance Company,
Respondent,

Eugene J. Crosby, guardian ad litem for
R.L.E., et al., Appellants,
(CX–83–1381),

Michael Phillips, Respondent.

Nos. C2–83–936, C5–83–1207
and CX–83–1381.

Supreme Court of Minnesota.

Oct. 19, 1984.

Rehearing Denied Oct. 19, 1984.

Donald M. Jardine, Mary A. Rice, St. Paul, for Independent School Dist. 656.

James T. Martin, So. Minneapolis, for Security Ins. Co.

Michale J. Healy, St. Paul, for Ellerbusch.

Joseph M. Goldberg, Minneapolis, for Horace Mann Ins. Co.

John H. McLoone, IV, Waseca, for Michael Phillips.

KELLEY, Justice.

Horace Mann Insurance Company (Horace Mann), the insurer of the Minnesota Education Association (MEA), brought this declaratory judgment action against Independent School District No. 656 (school district); its insurer, Fireman's Fund Insurance Company (Fireman's Fund); Michael Phillips (Phillips); his homeowner's insurer, Security Insurance Company (Security); and a father and his daughter, R.L.E.,[1] plaintiffs in a lawsuit commenced against the school district and Phillips, one of its teachers, claiming damages sustained by them as the result of alleged sexual contact by Phillips with R.L.E. in the course of his employment as a teacher with the school district (the main action). The trial court granted summary judgment to Horace Mann and Security, holding that neither had the duty to defend or indemnify Phillips in the main action. The trial court denied the school district's and Fireman's Fund's initial partial summary judgment motion requesting orders that they had no duty to defend Phillips in the main action. Subsequent to these initial orders and judgment, the trial court entered orders denying amended finding motions brought by the guardian ad litem, Fireman's Fund and the school district. It also entered an order denying a second summary judgment mo-

---

1. By order of the district court, Eugene J. Crosby was named guardian ad litem of R.L.E.

tion alleging no duty to defend or indemnify brought by Fireman's Fund. The guardian ad litem, the school district and Fireman's Fund bring this appeal.[2] We affirm the orders and judgment granting Horace Mann and Security summary judgment and reverse the order denying Fireman's Fund summary judgment on the defense and indemnification issues. We hold the school district has the duty to defend Phillips but not to indemnify him in the main action.

Michael Phillips was employed by the school district. His duties included serving as assistant coach of the girls basketball team and as a chemical dependency counselor for the school system. During the 1978–79 and 1979–80 school years, R.L.E. was a tenth and eleventh grade student in the school district and a member of the girls basketball team. At a school orientation session in fall 1978, the students in the high school had been informed that Phillips was available for information, counseling and discussions with respect to chemical use problems.

R.L.E. had a history of drug use beginning with the use of marijuana in the eighth grade. By the tenth grade, when she was on the girls basketball team, she also used "speed," hashish and alcohol. Phillips became aware of these chemical use problems and began advising and counseling R.L.E. R.L.E. alleged Phillips inflicted several sexual contacts upon her during her counseling with him and while she was on the basketball team. After the last alleged contact, the girl began to exhibit emotional problems more severe than those previously experienced with her drug problems. Phillips initially recommended inpatient treatment to her parents, who consulted him, as her counselor, regarding her increased problems. Since 1979, she has experienced severe psychological ill-ness and has required hospitalization on numerous occasions for suicidal tendencies, depression and anorexia. Her medical expenses, as of 1983, totaled approximately $90,000. The damage to R.L.E., allegedly arising out of the sexual contact incidents, prompted the filing of the main action in which R.L.E. and her guardian ad litem alleged strict liability and assault and battery against Phillips, a claim against the school district as his employer, and a claim against the school district for its own negligence in hiring and retaining Phillips in the position he held. Upon being sued, Phillips requested defense and indemnity from Horace Mann, Security, Fireman's Fund and the school district. Horace Mann then commenced the instant declaratory judgment action to determine its obligation, if any, to defend and indemnify Phillips. The other insurers and the school district likewise asserted claims of non-liability in this action. All parties moved for either summary judgment or partial summary judgment.

1. We first consider whether the court erred in granting Horace Mann summary judgment. As a member of the MEA, Phillips was an insured under the policy issued by Horace Mann to that association. The trial court granted summary judgment to Horace Mann under an "intentional damages" exclusion in the policy, holding "that the nature of Phillips' conduct was such that an intention to inflict injury can be inferred as a matter of law." *See Fireman's Fund Insurance Co. v. Hill*, 314 N.W.2d 834 (Minn.1982).

The Horace Mann liability policy issued to the MEA contains the following relevant provisions:

## II. DEFINITIONS

\* \* \* \* \* \*

2. The school district and Fireman's Fund appeal from the orders and judgment granting Horace Mann and Security summary judgment and denying partial summary judgment to the school district and Fireman's Fund on their duty to defend Phillips. They also requested discretionary review of the order denying them partial summary judgment, the denial of their motion for amended findings, and the denial of Fireman's Fund's second motion for summary judgment on its duty to defend and indemnify Phillips. The guardian ad litem appeals from the judgment granting Horace Mann and Security summary judgment and the order denying the motion for amended findings.

G. OCCURRENCE. The term *"Occurrence"* means an event which results in damages to someone other than the member. An *occurrence* can involve a single sudden event or the continuous or repeated exposure to conditions. If the latter the exposure shall constitute a single *occurrence* and shall be deemed to have *occurred* as of the most recent exposure to said conditions.

\*     \*     \*     \*     \*     \*

## III. COVERAGES

\*     \*     \*     \*     \*     \*

A. EDUCATORS LIABILITY. The Company agrees to pay all damages which the *insured* shall become legally obligated to pay as a result of any claim arising out of an *occurrence* in the course of the *insured's educational employment activities,* and caused by any acts or omissions of the *insured* or any other person for whose acts the *insured* is legally liable, not to exceed the limit of liability stated in the Declarations for this coverage.

\*     \*     \*     \*     \*     \*

## VII. EXCLUSIONS

\*     \*     \*     \*     \*     \*

H. INTENTIONAL DAMAGES. Section III(A) of this policy does not apply to *occurrences* involving damages which are the intended consequence of action taken by or at the direction of the *insured.*

Appellants[3] argue that the definition of "occurrence" in the Horace Mann policy is so broadly defined as "an event which results in damages" that intentional injuries are covered under the policy; that the trial court erred by applying *Fireman's Fund Insurance Co. v. Hill,* 314 N.W.2d 834 (Minn.1982), to the instant case because *Hill* was an interpretation of an "intentional injury" exclusion, whereas the Horace Mann policy excludes "intentional dam-

ages"; and that the "intentional damages" exclusion is ambiguous as to what it excludes so it should be construed in favor of coverage.

■ The first and third arguments are without merit if the exclusion for "intentional damages" is unambiguous. In *Hill* the exclusionary clause was for "intentional injury." We do not discern any material difference between that and "intentional damages." The words "damages" and "injuries" used in this context are synonymous. Black's Law Dictionary 706 (rev. 5th ed. 1979); Burton's Legal Thesaurus 132, 284 (1980); Webster's Third New International Dictionary 1164 (4th ed. 1976). *See also Ziolkowski v. Continental Casualty Co.,* 284 Ill.App. 505, 510–11, 1 N.E.2d 410, 412 (1936), *aff'd,* 365 Ill. 594, 7 N.E.2d 451 (1937).

■ Furthermore, the trial court's reliance on *Hill* was not misplaced. An intentional injury or damage exclusion excludes coverage in a liability policy either if "a reason for the act is to inflict bodily injury or when the character of the act is such that an intention to inflict an injury can be inferred." *Caspersen v. Webber,* 298 Minn. 93, 99, 213 N.W.2d 327, 330 (1973). Phillips, in a deposition, claimed his actions were not intended to damage the girl. Thus, he did not subjectively intend to harm, although he intended to commit those sexual contacts to which he admits. Nevertheless, those subjective statements do not preclude this court from inferring an intent to injure or to damage from the nature of the acts involved—unconsented sexual contact with a minor. *Hill,* 314 N.W.2d at 835; *see also Woida v. North Star Mutual Insurance Co.,* 306 N.W.2d 570 (Minn.1981); *Continental Western Insurance Co. v. Toal,* 309 Minn. 169, 244 N.W.2d 121 (1976). Accordingly, we conclude the trial court correctly held that the Horace Mann policy excluded coverage for defense costs and indemnity of Phillips as a matter of law.

---

**3.** Unless otherwise identifying a specific appellant, the term "appellants" refers to the school district, Fireman's Fund and the guardian ad litem.

2. At the times the alleged acts took place, Phillips was insured under a homeowner's policy issued by Security. The policy itself contained an intentional act exclusion. The trial court found that exclusion precluded coverage for defense and indemnity of Phillips as a matter of law. The Security policy, however, also had a business pursuits endorsement. Appellants argue that the intentional act exclusion in the main policy is inapplicable to the business pursuits endorsement, and therefore Security must defend and indemnify Phillips in the main action.

Resolution of the issue raised requires consideration of the following relevant policy language: [4]

## SECTION II—LIABILITY COVERAGES

### COVERAGE E—PERSONAL LIABILITY

If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, we will:

    a. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

    b. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

\*    \*    \*    \*    \*    \*

### SECTION II—EXCLUSIONS

1. **Coverage E—Personal Liability and Coverage F—Medical Payments to Others** do not apply to **bodily injury or property damage:**

    a. which is expected or intended by the **insured;**

    b. arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured.**

\*    \*    \*    \*    \*    \*

## BUSINESS PURSUITS ENDORSEMENT

### (Section II Only)

In consideration of an additional premium, it is agreed that *such insurance as is afforded by this policy under Coverage E—Personal Liability* and, indicated below by an "X", as included, Coverage F—Medical Payments to Others *is extended* to apply with respect to the business pursuits of the Insured(s) named below in connection with the business stated below, *subject to the following provisions:* (emphasis added)

    **Name of Insured(s)** Michael & Linda Phillips

    **Business** Teacher with Corporal Punishment (D–E)

Liability for corporal punishment [X] included

\*    \*    \*    \*    \*    \*

This insurance does not apply:

\*    \*    \*    \*    \*    \*

4. when the insured is a member of the faculty or teaching staff of any school or college;

\*    \*    \*    \*    \*    \*

    b. to bodily injury to any pupil arising out of corporal punishment administered by or at the direction of the Insured, but this exclusion does not apply under Coverage E—Personal Liability if liability for corporal punishment is indicated above by an "X", as included.

Appellants argue the policy is unambiguous in that the business pursuits-teaching endorsement is subject only to the exclusions listed in the endorsement itself. The argument is without merit. The endorsement says "such insurance as is afforded by this policy under Coverage E—Personal Liability \* \* \* is extended \* \* \* subject to

4. While the events in issue here spanned two policy periods involving two policies of insurance, both policies contained substantively the same definitions, coverage, exclusions and endorsements.

the following provisions." The liability insurance afforded under Coverage E is limited by a list of exclusions within that section of the policy, including the intentional injury exclusion. Because there is no coverage under the main policy for intentional injuries, there is no "extended" coverage for an intentional injury under the endorsement, unless the act involves corporal punishment inflicted while engaged in the business pursuit of teaching. The main policy does not cover intentional acts of the insured. The business pursuits endorsement merely provides coverage for the act of administering corporal punishment while the insured is engaged in the business of teaching. Corporal punishment is covered by express coverage language in the business pursuits endorsement. Likewise, the business pursuit of teaching is no longer excluded under the business pursuits exclusion in the main policy, but if there is no express coverage language elsewhere for the occurrence involved, the insurer has no duty to indemnify or defend.

Next, appellants argue the policy with the endorsement is ambiguous as to which exclusions apply and, therefore, must be construed in favor of the insured. *See, e.g., Caspersen*, 298 Minn. at 98, 213 N.W.2d at 330; *see also Northwest Airlines, Inc. v. Globe Indemnity Co.*, 303 Minn. 16, 26, 225 N.W.2d 831, 837 (1975); *Farkas v. Hartford Accident and Indemnity Co.*, 285 Minn. 324, 327, 173 N.W.2d 21, 24 (1969). The coverage provided under Coverage E (subject to the Coverage E exclusions) is extended under the endorsement. In the endorsement Security relisted some of those main policy exclusions, but not all of them. Notwithstanding, it appears clear there exists no ambiguity. The first sentence of the endorsement makes perfectly clear the limits of coverage under the endorsement. Some of the exclusions listed on the endorsement are merely redundant because the same exclusions which limit coverage are listed under Coverage E of the main policy.

■ Finally, appellants argue the provisions of the main policy conflict with the endorsement. "[W]here provisions in the body of the policy conflict with an endorsement, the provision of the endorsement governs." *Dairyland Insurance Co. v. Implement Dealers Insurance Co.*, 294 Minn. 236, 245, 199 N.W.2d 806, 811 (1972); *see also Wyatt v. Wyatt*, 239 Minn. 434, 437–38, 58 N.W.2d 873, 875–76 (1953) (no conflict between body of policy and endorsement and coverage excluded). Appellants school district and Fireman's Fund find a conflict because, "[t]o read them [the main policy and the endorsement exclusions] together would result in a duplication of two of the exclusions, and * * * would render the Business Pursuits Endorsement itself a nullity."

■ Duplication does not raise a conflict between the policy and endorsement. It just creates superfluous policy language. There is, however, a conflict between the intentional injury exclusion and corporal punishment coverage under the endorsement. But this conflict only warrants applying the endorsement language rather than the intentional injury exclusion to cover corporal punishment inflicted by the insured while engaged in the business of teaching. It does not void the intentional injury exclusion of the main policy in all other respects. The policy endorsement language is clear, and the only conflict between the main policy intentional injury exclusion and the endorsement is over coverage of corporal punishment. The net result of reading the policy and endorsement together is that the endorsement completely modifies the original business pursuits exclusion and creates a limited exception to the original intentional injury exclusion. This in no way creates additional coverage for intentional injuries caused other than by corporal punishment under the policy.

3. The trial court denied Fireman's Fund's first motion for partial summary judgment[5] on the grounds there was no

---

5. Fireman's Fund made an original motion solely for partial summary judgment on its duty to defend Phillips in the main action. Its second

summary judgment motion requested relief as to both the duties to defend and to indemnify.

exclusion under the penal statute violation exclusion of the policy [6] because the exclusion applied only to "personal injury" (defined in the policy as false arrest or imprisonment, libel, slander, invasion of privacy, and invasion of the right of private occupancy) whereas R.L.E. had suffered "bodily injury." The trial court held there were factual issues whether Phillips' actions were willful violations of a penal statute or ordinance and also whether Phillips' actions were within the scope of his employment duties so as to make him an additional insured under the policy.

■ In June 1983, Fireman's Fund made a second motion for summary judgment based on the policy definition of "occurrence," which contained an exclusion for intentional injuries. The trial court likewise denied this motion. We conclude the applicable policy language demonstrates that no "covered" occurrence took place in the instant case, and therefore the trial court erred by denying this second motion for summary judgment. The Fireman's Fund policy contained the following pertinent language:

### DEFINITIONS

\*     \*     \*     \*     \*     \*

"occurrence" means an *accident,* including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** *neither expected nor intended from the standpoint of the* **insured;**

\*     \*     \*     \*     \*     \*

### COVERAGE PART—COMPREHENSIVE GENERAL LIABILITY INSURANCE

\*     \*     \*     \*     \*     \*

**6.** That policy exclusion insofar as relevant reads as follows:
#### GENERAL LIABILITY MULTI/COVER ENDORSEMENT
\*     \*     \*     \*     \*     \*
**I.  PERSONAL INJURY LIABILITY**
\*     \*     \*     \*     \*     \*
**3.** Solely as respects the insurance applicable to **personal injury,** the exclusions of the policy are deleted and replaced by the following:
This insurance does not apply:
(a) to **personal injury** arising out of the willful violation of a penal statute or ordinance

### 1.  COVERAGE A—BODILY INJURY LIABILITY
### COVERAGE       B—PROPERTY DAMAGE LIABILITY

The Company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of

Coverage A.  **bodily injury** or

Coverage B.  **property damage**

to which this insurance applies, caused by an **occurrence** \* \* \*.  (emphasis added)

This language is identical to the policy language in *Hill.* In that case we said:

Under the policy Fireman's agreed to pay, on behalf of the insured, all damages for which the insured became liable because of bodily injury or property damage caused by an occurrence. An occurrence was defined as an *accident* which results in bodily injury or property damage. The policy excluded from coverage "bodily injury or property damage which is either expected or intended from the standpoint of the insured."

*Hill,* 314 N.W.2d at 835 (emphasis added). *Hill* governs this case. Therefore, we hold the trial court should have granted Fireman's Fund's second motion for summary judgment on its duties to defend and indemnify Phillips.

**4.** Appellant school district claims the trial court erred in denying its motion for partial summary judgment on its duty to defend Phillips in the main action. The trial court ruled that under Minn.Stat. § 127.03, subd. 2 (1982) [7] the school district

committed by or with the knowledge or consent of any **insured:**
\*     \*     \*     \*     \*     \*

**7.** Minn.Stat. § 127.03, subd. 2 (1982) provides in part:
Upon written request of the teacher involved, any school district, however organized, shall provide legal counsel for any school teacher against whom claim is made or action is brought for recovery of damages in any tort action involving physical injury to any person or property or for wrongful death

had an absolute duty to defend Phillips. The court also held the school district's duty to indemnify raised a fact issue under Minn.Stat. § 466.07, subd. 1a (1982).[8]

■ Section 127.03, subd. 2 clearly establishes the school district's absolute duty to defend a teacher when the claim against the teacher arises "out of or in connection with the employment of such teacher with such school district." Moreover, we note that section 466.07, subd. 1a provides that the school district "shall * * * provide defense for any employee * * * in connection with any tort claim or demand arising out of an alleged act or omission occurring within the scope of his employment * * *." The last sentence of section 466.07, subd. 1a provides: "The provisions of this subdivision requiring indemnification do not apply in the case of malfeasance in office or willful or wanton neglect of duty." The school district concludes that since the title of section 466.07, subd. 1a uses the term "indemnify" while the body of the subdivision uses the terms "indemnify" and "provide a defense," the term "indemnify" as used in the statute includes the term "defense." Therefore, it contends, there is no duty to either indemnify *or defend* if Phillips' alleged acts constituted "malfeasance in office or willful or wanton neglect of duty." In our view, there is no merit to this argument. Section 127.03, subd. 2 clearly establishes an absolute duty to defend Phillips. Moreover, section 466.07, subd. 1a mandates a duty to defend. The latter section only limits the school district's obligation to indemnify against judgments or settlements if malfeasance or willful or wanton neglect of duty exists.

5. The school district next contends that if Fireman's Fund coverage of Phillips is excluded as a matter of law, the district should be excused from liability under the Municipal Tort Liability Act. Minn.Stat. ch. 466 (1982). In support of this claim, it relies on *Scott v. Independent School District No. 709, Duluth*, 256 N.W.2d 485 (Minn.1977), for the proposition that a school district is only liable for its employees' torts to the extent of insurance coverage. In that case, the school district was held liable for negligence per se up to the maximum statutory liability limit of the tort liability act, although it had not procured insurance coverage to the maximum limit. *Scott* involved the issue of the school district's liability for its own negligent actions, not the issue of indemnity for the torts of its employees. It is, therefore, irrelevant to the issue here presented. If the school district is itself negligent, the Fireman's Fund policy carries a liability limit well in excess of the maximum school district liability under Minn.Stat. § 466.04, subd. 1 (1982). The complaint in the main action does charge the school district with negligent hiring and supervision. As to those claims, Fireman's Fund under its policy would have to defend and indemnify the school district. But here, the issue is not the liability of the school district for its own negligence, but rather one of liability to indemnify against Phillips' liability.[9] Furthermore, because the district attempt-

arising out of or in connection with the employment of such teacher with such school district.

8. There is some confusion about whether the indemnity provision was before the court. The school district made a motion for partial summary judgment only on the issue of duty to defend. The trial court's ruling on the motion seems to encompass the indemnity issue. Nonetheless, the school district in its supplemental memorandum in support of a motion for amended findings and in its appeal brief argues it has neither the duty to defend nor indemnify. On appeal, respondents never challenged the consideration of the indemnity issue and, in

fact, agreed to it. Therefore, we deem it submitted to us.

9. Minn.Stat. § 466.07, subd. 1 (1982) provides that a school district "may" indemnify its employees against any tort claim or demand, whether groundless or otherwise, for an act arising within the scope of employment or official duties. Subdivision 2 of the same statute, however, provides that subdivision 1 is inapplicable in cases of "malfeasance in office or willful or wanton neglect of duty." Thus, if malfeasance or willful or wanton neglect of duty on the part of an employee exists, the school district is barred from providing indemnification.

ed to obtain liability insurance to cover the district and its employees, it has waived "the defense of governmental immunity to the extent of the liability stated in the policy." Minn.Stat. § 466.06 (1982). Thus, the procurement of insurance coverage waives the immunity defense up to the policy limits even though the employee's tort may be subject to a policy exclusion.

 However, we do agree with the school district that the trial court erred in denying its motion for partial summary judgment on the indemnity issue. The "malfeasance in office or willful or wanton neglect of duty" exception of section 466.-07, subd. 1a releases the school district from the duty of indemnifying its employee Phillips. It can hardly be seriously argued that sexual contact by Phillips alleged in the main action did not constitute malfeasance or willful neglect of duty by a school athletic coach, teacher and counselor. When an adult teacher-counselor engages in sexual contact with a 16-year-old student, the exception of section 466.07, subd. 1a applies as a matter of law. *See, e.g., Jacobsen v. Nagel,* 255 Minn. 300, 304, 96 N.W.2d 569, 573 (1959), citing *Daugherty v. Ellis,* 142 W.Va. 340, 97 S.E.2d 33 (1956) (defining malfeasance); *In re Olson,* 211 Minn. 114, 117, 300 N.W. 398, 400 (1941) (neglect of duty).

The order and judgment granting Horace Mann and Security summary judgment is affirmed. The order denying Fireman's Fund's second motion for summary judgment is reversed. It is ordered that summary judgment in favor of Fireman's Fund be entered on the issues of defense and indemnification of Phillips. It is further ordered that summary judgment be entered in favor of the school district adjudging it is not liable to indemnify Phillips for any of his acts. The order holding that the school district had the duty to defend Phillips is

10. By brief, appellant guardian ad litem for R.L.E. attempted to raise the issue of whether the school district should be vicariously liable for Phillips' acts under a nondelegable duty to protect its students. The issue was not appealed nor was discretionary review requested. Thus, this court has no jurisdiction to consider it.

affirmed. The order denying the school district partial summary judgment on the issue of indemnification of Phillips is reversed.[10]

Affirmed in part; reversed in part.

Moreover, the issue of vicarious liability involves the main action—not this declaratory judgment action. Finally, the issue was not raised in the trial court and cannot be raised on appeal. *Thompson v. Barnes,* 294 Minn. 528, 536, 200 N.W.2d 921, 927 (1972).