Illinois National Insurance Company, a Corporation, Plaintiff-Appellant, v. John P. Rose and Gertrude M. Rose, Defendants-Appellees.

Gen. No. 67–81.

Third District.

March 26, 1968.

McConnell, Kennedy, McConnell & Morris, of Peoria, for appellant.

William Makovic, of East Peoria, for appellees.

STOUDER, J.

Plaintiff-Appellant, Illinois National Insurance Company, brought this action in the Circuit Court of Peoria County against Defendant-Appellee, John Rose, seeking a declaration of right with respect to an uninsured motorist provision in a policy issued by plaintiff to defendant. The trial court found that coverage was afforded by the uninsured motorist provision and it is from this determination that the plaintiff insurer appeals.

In September, 1964, defendant Rose was injured in a collision between an automobile which he was operating and one operated by Anna Jordan. At the time of the

collision Anna Jordan was insured by Bell Mutual Casualty Company and defendant Rose was insured by plaintiff, Illinois National. In October, 1964, defendant Rose filed suit for damages against Anna Jordan. No appearance was immediately filed for Anna Jordan. Defendant Rose notified plaintiff, Illinois National, of the possibility that Anna Jordan was an uninsured motorist although thereafter an attorney did file an appearance on behalf of Anna Jordan. In September, 1965, Bell Mutual Casualty Company was found to be insolvent and its affairs were turned over to a receiver. Thereafter defendant Rose requested arbitration as required by the terms of the uninsured motorist provision but such request was declined by plaintiff, Illinois National. Plaintiff then brought this action for a declaration of rights with respect to the uninsured motorist provision and it is from a determination in defendant's favor that this appeal follows.

At the time of the collision the only Statute in effect in Illinois regarding uninsured motorist protection was chapter 73, section 755A, Ill Rev Stats 1963. This provision describes the minimum limits of such coverage and the obligation to include such coverage in all liability policies issued in the State unless rejected in writing by the insured. The provision does not define uninsured motorist, but leaves such definition to policy provisions.

In the development of uninsured motorist protection, the earlier policies defined an uninsured motor vehicle as one with respect to which there was no applicable liability policy. In later policies, as in the instant case, the definition was extended to include as an uninsured motor vehicle, one with respect to which such a policy was applicable but coverage under such policy had been denied. Thus in the instant case an uninsured motor vehicle is defined in two aspects, the absence of ap-

plicable liability insurance and if insurance applicable where coverage has been denied.

Both parties agree the rule is now settled in Illinois that a policy of liability insurance is applicable as such term is used in an uninsured motorist provision notwithstanding the subsequent insolvency of the insurance company issuing such liability policy. Dreher v. Aetna Casualty & Surety Co., 83 Ill App2d 141, 226 NE2d 287. However since the policy in the instant case also includes the circumstance of denial of coverage under an applicable liability policy, the question remains whether subsequent insolvency is a denial of coverage. Both parties agree, and we concur, that there is no controlling Illinois case dealing directly with this question. Consequently resort to the law of other states is appropriate. Aageson v. Munson, 25 Ill App2d 336, 166 NE2d 637.

Plaintiff contends that a denial of coverage means and is limited to those affirmative acts of the insurer based on the conduct of the insured, generally characterized as "policy defenses" and that the subsequent insolvency of the insurer is not such an affirmative act. Plaintiff urges the application of the reasoning and rule announced in Pattani v. Keystone Ins. Co., 209 Pa Super 15, 223 A2d 899 (1966), since the statutory provisions in Pennsylvania and the provisions of the policy involved in the case are similar to the Illinois Statute, chapter 73, section 755A, Ill Rev Stats, and the provisions of the policy involved in this case. It is true that the statutory and policy provisions are similar and that the Court in Pattani v. Keystone Ins. Co. supra, determined that subsequent insolvency of a liability carrier did not constitute a denial of coverage. However this decision was reversed by the highest court in Pennsylvania in Pattani v. Keystone Ins. Co., 426 Pa 332, 231 A2d 402 (1967), the court adopting the rule as announced in State Farm Mut. Auto-

mobile Ins. Co. v. Brower, 204 Va 887, 134 SE2d 277, and followed in North River Ins. Co. v. Gibson, 244 SC 393, 137 SE2d 264, and Katz v. American Motorist Ins. Co., 244 Cal App2d 886, 53 Cal Rptr 669, namely that subsequent insolvency does constitute a denial of coverage.

Plaintiff also urges the application of the New York rule as illustrated by McCarthy v. Motor Vehicle Acc. Indemnification Corp., 16 App2d 35, 224 NYS2d 909, which holds that subsequent insolvency is not a denial of coverage. New York has a different system of providing uninsured motorist protection, the terms and conditions being designated in the Statute under seven specified categories. Section 608, paragraph (e–2), in effect at the time of the McCarthy case, provides, "the insurer or insurers . . . have disclaimed liability or denied coverage because of some act or omission of the person or persons liable or alleged to be liable, . . ." In view of such statutory provision no analogous situation is presented with respect to the law of New York warranting the application of the rule to the case before us.

Thus in Virginia, South Carolina, California and Pennsylvania, the only states in which it appears that the question has been decided under circumstances similar to those in the instant case, it has been determined that the subsequent insolvency of the liability carrier is a denial of coverage as the term is used in an uninsured motorist provision. The reasoning employed is that the insured's rights, with respect to the protection which the liability carrier has agreed to provide, are just as effectively denied whether the insurer's conduct be voluntary or involuntary. With this reasoning we must agree. Accordingly, we believe the trial court correctly ruled that the subsequent insolvency did constitute a denial of coverage thereby affording coverage to defend-

ant under the uninsured motorist provision of his policy with plaintiff.

The General Assembly of Illinois amended the Insurance Code in 1967 and included the insolvency of the liability carrier within the protection to be afforded by an uninsured motorist provision. Chapter 73, section 755A(2), Ill Rev Stats (1967). Such amendment is by its terms prospective only, but despite plaintiff's assertion to the contrary, the meaning of the policy which we have adopted is not and does not depend upon a retroactive application of the amendment. From the foregoing it is clear that we have applied the generally established meaning of the policy provision even though it is true that the precise question would not have arisen had the amendment been in effect. The amendment relates generally to the insolvency of a liability carrier and does not purport by definition or otherwise to deal with the provisions of insurance policies theretofore in effect and cannot be said to declare or recognize that all or any existing policies do not or cannot afford coverage by appropriate provision therefor.

For the foregoing reasons the judgment of the Circuit Court of Peoria County is affirmed.

Judgment affirmed.

ALLOY, P. J. and SCHEINEMAN, J., concur.