TAB WASHINGTON, a minor, by EARL WASHINGTON, has father and next friend, Plaintiff-Appellee, *v.* MERIT MUTUAL INSURANCE COMPANY, Defendant-Appellant.

(No. 54925;

First District—May 5, 1972.

Baker & McKenzie, and Stern, Rotheiser & Ginsberg, both of Chicago, (Gerald M. Rotheiser, Francis D. Morrissey, and Michael P. Connelly, of counsel,) for appellant.

Kenneth S. Lewis, of Chicago, (Howard T. Goffen, of counsel,) for appellee.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

On March 22, 1965, while crossing a street, plaintiff was injured by a car operated by William Oliver who was at that time insured by St. Lawrence Insurance Company. On January 2, 1967, approximately 20 months after the accident, the Circuit Court of Cook County ordered the liquidation of St. Lawrence Insurance Company and appointed the Director of Insurance of the State of Illinois as liquidator.

Plaintiff sought a declaratory judgment against defendant, Merit Mutual, alleging that he was entitled to recover benefits under the uninsured motorist provision of his own insurance policy. Defendant answered, and plaintiff filed for a summary judgment, which was granted. Defendant's motion for rehearing was denied, and this appeal followed.

The effect of the court's orders is to give plaintiff a claim to benefits under the Uninsured Motorist Endorsements of his policy of insurance.

At the time of the accident, plaintiff held a paid-up policy of automobile liability insurance issued by defendant to Earl Washington, father of plaintiff. The policy contained the following provisions:

"The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury * * *.

Uninsured automobile means:

an automobile with respect to the ownership, maintenance or use

of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, *no bodily injury liability bond or insurance policy applicable at the time of the accident* with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond *or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder* \* \* \*." (Emphasis supplied.)

Plaintiff contends that under the circumstances he is entitled to recover benefits from defendant for his injuries as though they had been caused by the owner of an uninsured automobile. He states that the liquidation of St. Lawrence after the occurrence in question either left the other driver uninsured for practical purposes as of the date of the accident, or constitutes a denial of coverage by his insurance company, thus requiring defendant to pay under its uninsured motorist coverage. It was on this theory that judgment was entered in the trial court.

Defendant contends that Oliver was not an uninsured motorist within the meaning of the policy issued to plaintiff. Rather, it suggests that because the Liquidator distributes assets [1] to those who have valid claims against the company, coverage as such (but in a lower amount) is still available and Oliver is therefore not uninsured within the meaning of the statute as it then existed.

Plaintiff's argument is based primarily on the reasoning adopted by the court in *Illinois National Insurance Co. v. Rose*, 93 Ill.App.2d 329, 235 N.E.2d 675, where the court construed a similar contract provision against the identical statute which applies to this case. (Ill. Rev. Stat. 1963, ch. 73, par. 755a.) [2] That court reasoned that a subsequent insolvency constituted a denial of coverage because "the insured's rights \* \* \* are just as effectively denied whether the insurer's conduct be voluntary or involuntary." We believe the *Rose* decision failed to consider a number of significant features of Illinois law which bring us to the opposite result.

---

[1] The Illinois Bureau of Liquidation has in excess of $10,000,000 in its custody for distribution to claimants against companies under its jurisdiction.

[2] "On and after the effective date of this amendatory Act of 1963, no policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided herein or supplemental thereto, in limits for bodily injury or death set forth in Section 7—203 of the "Illinois Motor Vehicle Law", approved July 11, 1957, as heretofore and hereafter amended, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles \* \* \*."

■■ In *Preferred Risk Mutual Insurance Co. v. Glenzer,* 127 Ill.App.2d 142, 262 N.E.2d 182, we held that post-accident insolvency of the insurance company did not in itself activate the uninsured motorist provision in the plaintiff's own policy. In that case, however, we had no occasion to consider the argument now made that insolvency amounts to denial of coverage. Once the Director of Insurance has taken control of the assets of the insolvent insurer under Ill. Rev. Stat. 1965, ch. 73, pars. 799—833, it is his duty to liquidate by distributing to the policy holders and other creditors, their *pro rata* share of the assets of the company based on the equitable value of their respective policies. The general rule is that all creditors are entitled to share equally in the assets of an insolvent company in proportion to their claims. *People v. Marquette National Fire Insurance Co.,* 267 Ill.App. 478, 482.

Under provisions of the act, some claims may be disallowed. But, by merely ordering liquidation of an insolvent company, neither the Circuit Court nor the company has effectively *denied* any policy holder's coverage. Insolvency itself is not a denial of coverage. The *pro rata* distribution of assets may produce less than full satisfaction of the claim depending on the amount of claims filed, the extent of the coverage outstanding, and the liquidation value of the company's assets. Yet less than full satisfaction cannot be deemed an absolute denial, as is contemplated by the agreement between the parties, especially as of the date of the liquidation order, since at that time nothing other than a guess can be made as to ultimate recovery.[3]

Only a limited amount of coverage is required to remove a claim from application of the uninsured motorist clause, so full recovery for all injuries sustained cannot be said to have been a matter of public policy declared by the statute in question.

Also, we believe that even a liberal interpretation of the term, "denial of coverage," cannot be expanded to include the present situation where

---

[3] Upon closer examination of the act empowering the Director of Insurance to take control of the insolvent company, it should be noted that an insurance company may be rehabilitated and permitted to once again conduct business in the State. Ill. Rev. Stat. 1965, ch. 73, par. 804(4). "If at any time the Director shall find that the causes and conditions which made such proceeding necessary have been removed he may petition the court for an order terminating the conduct of the business by said Director and permitting such company to resume possession of its property and the conduct of its business and for a full discharge of all liability and responsibility of such Director. No order for the return to such company of its property and business shall be granted unless the court after a full hearing shall determine that the purposes of the proceeding have been fully accomplished."

Therefore, a court order directing the take-over of an insolvent firm by the Director of Insurance might sometimes *favorably* affect the claim of a plaintiff and possibly result in full satisfaction of his claim, if the Director is able to rehabilitate an otherwise failing company.

plaintiff may be able to collect less than the full amount of his claim from the liquidator. See *Dreher v. Aetna Casualty & Surety Co.*, 83 Ill.App.2d 141, 226 N.E.2d 287.

In effect, plaintiff's argument equates the term, "denies coverage," (voluntary in nature) with the expression, "failure of coverage," (involuntary in nature).

■■ But "denies coverage," as we understand it, connotes an affirmative act such as the rejection of a policy holder as an insured, or the assertion that a particular type of accident is not covered by plaintiff's policy, that the insured has failed to cooperate, etc. See *Michigan Mutual Liability Co. v. Pokerwinski*, 8 Mich.App. 475, 154 N.W.2d 609.

In *Uline v. Motor Vehicle Accident Indemnification Corp.*, 213 N.Y.S.2d 871, 874, the court held that the insured did not deny coverage or disclaim liability by being placed under the control of a Receiver in Bankruptcy subsequent to the accident in question.

"The insurance company in the present case did not disclaim liability, nor did it deny coverage. From the motion papers it is clear that the *only* reason it failed to afford protection was due to the fact that it had been placed in the hands of a Receiver in Bankruptcy. To deny coverage is to take the position that for some reason or other the policy does not encompass the particular accident. No such claim is made here."

■■ There can be little doubt of the legislature's authority to change the terms of uninsured motorist coverage required, as it did some two years after the occurrence in this case. (Ill. Rev. Stat. 1967, ch. 73, par. 755a, effective July 1, 1967.) We note in passing, however, that it did so, not by expanding a definition of the word "denies," but simply by stating that the uninsured provision would apply if the insurer "is unable to make payment" on or after the accident date because of insolvency or orders of rehabilitation or liquidation. Unfortunately for the instant plaintiff, however, this change in the law came too late to affect his claim.

■■ We conclude that plaintiff is not entitled to recover under the uninsured motorist provision of his own policy, and the trial court's judgment to that effect is reversed. The cause is remanded for further proceedings not inconsistent with this opinion, which in this case can only mean with direction to enter judgment in favor of defendant in accordance with its pleading in response to plaintiff's complaint for declaratory judgment.

Reversed and remanded with directions.

LORENZ, P. J., and DRUCKER, J., concur.