JOSEPH N. KASZESKI, Individually and as Executor of the Estate of FLORENCE KASZESKI, Deceased, Plaintiff-Appellee, *v.* THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, Defendant-Appellant.

(No. 55078;

First District—June 1, 1972.

Fredric J. Grossman, James T. Ferrini, and Clausen, Hirsh, Miller & Gorman, all of Chicago, for appellant.

Allen H. Meyer, of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

We are asked to decide whether the uninsured motor vehicle provision of an automobile policy extends to those persons covered, when, at the time of an accident, the party who allegedly caused the injuries was covered for liability insurance by an insurance carrier which subsequently became insolvent. Plaintiff brought this declaratory judgment

action to determine the rights and obligations of the parties under a policy of automobile liability insurance issued to plaintiff's decedent by defendant. The trial court found that coverage was afforded to plaintiff by the uninsured motorist provision and defendant appeals.

On August 26, 1964, plaintiff's decedent, Florence Kaszeski, was a passenger in an automobile driven by plaintiff, which was then involved in a collision with an automobile driven by Thomas Mikus, the alleged tort-feasor. At the time of the accident, Mikus carried a valid policy of liability insurance issued by Progressive General Insurance Company. Subsequent to the accident in question, Progressive became insolvent.

Defendant had issued an automobile liability policy to plaintiff's decedent which was in effect on the date of the accident in question. The policy contained a provision that defendant would pay plaintiff for damages caused by an owner or operator of an uninsured automobile. The policy defined an uninsured automobile as one on which there was no liability insurance applicable at the time of the accident, or as an automobile on which there was applicable liability insurance in effect, but that the company writing the same denies coverage. The trial court found that the subsequent insolvency of Progressive amounted to a denial of coverage to plaintiff and ordered defendant to submit to arbitration to determine the extent of its liability, if any.

In urging reversal of the trial court's order, defendant has asked that we reject an earlier holding of this court. In *Illinois National Insurance Co. v. Rose,* 93 Ill.App.2d 329, 235 N.E.2d 675, the court was faced with precisely the same issue presented in the instant case. The court observed that a majority of the jurisdictions deciding the same issue had found that an insured's rights are just as effectively denied whether the insurer's conduct be voluntary or involuntary, and held that the subsequent insolvency of a liability insurer of a motorist involved in a collision with the insured's vehicle constituted a denial of coverage so as to afford coverage to the insured under the uninsured motorist provision of his policy.

Although, in our view, an opposite result is required, we must mention in fairness that when the able trial judge entered the instant order, *Rose* was the only decision in Illinois which had faced this issue and was controlling.

■■■ An insurer has the right to limit coverage on a policy it issues and when it has done so, the clear and unambiguous language of the policy terms must be given meaning, "and the courts must construe and enforce the contract as made. The court has no right to make a new contract for the parties." (*Dreher v. Aetna Casualty and Surety Co.,* 83 Ill.App.2d 141, 144, 226 N.E.2d 287.) In *Uline v. Motor Vehicle Accident*

*Indemnification Corp.*, 213 N.Y.S.2d 871, the court, in holding that the insurer had not denied coverage by being placed in bankruptcy, stated that "to deny coverage is to take the position that for some reason or other the policy does not encompass the particular accident." p. 874. (Contra, *Bendelow v. Travelers Indemnity Co.*, 293 N.Y.S.2d 629.) In *Seabaugh v. Sisk*, 413 S.W.2d 602, the Missouri court, noting with approval the *Uline* definition of the words "deny coverage," held that the words were familiar and frequently used and, in the absence of an indication that the parties to the contract entertained a contrary intention, should be afforded their plain and ordinary meaning. The *Seabaugh* court went on to state, at p. 609:

> " 'Denies coverage' is not a linguistic 'Mother Hubbard' within whose enveloping warmth may be gathered all circumstances, conditions and contingencies arising subsequent to an accident which might prevent an injured person having uninsured motor coverage from making full financial recovery from the tort-feasor."

In *Michigan Mutual Liability Co. v. Pokewinski*, 8 Mich. App. 475, 154 N.W.2d 609, the court held that the term "denial of coverage" imported an affirmative act such as the rejection of a policy holder as an insured, or an assertion that a policy does not cover a particular accident. In *Winans v. Hartford Accident Indemnity Co.*, 25 Mich. App. 75, 181 N.W.2d 17, the court, while recognizing that the *Michigan Mutual* decision had employed the plain meaning approach to construe the language of the policy, based its contrary decision upon a public policy in Michigan that the uninsured motorist provision extended to a subsequent insolvency of the insurance carrier.

■■ In Illinois, the courts have consistently held that there is no public policy which would justify a rewriting of the contract so as to require an insurer to extend coverage beyond the terms of its contract. (*Putnam v. New Amsterdam Casualty Co.*, 48 Ill.2d 71, 269 N.E.2d 97; *Smiley v. Estate of Toney*, 44 Ill.2d 127, 254 N.E.2d 440; *Dreher v. Aetna Casualty and Surety Co.*, 83 Ill.App.2d 141, 226 N.E.2d 287.) We recognize, as did the *Rose* decision, that a subsequent statutory provision which included the solvency of a liability carrier within the uninsured motorist protection (Ill. Rev. Stat., 1967, ch. 75, par. 755a(2) ), was prospective only and thus not applicable to the case at bar.

■■■ If provisions limiting liability are ambiguous, they should be construed most strongly against the insurer. (*Moscov v. Mutual Life Insurance Co. of New York*, 387 Ill. 378, 56 N.E.2d 399.) However, we believe that the words, "denies coverage" are plain and unequivocal, and do not, as plaintiff urges, contain the possibility of ambiguity. We also believe that any attempt to expand their meaning to include subse-

quent insolvency of an insurer is not in accordance with the contract and amounts to a rewriting of the parties' contract by the court. The parties agreed to the terms of the coverage, and, in our view, there is no justification for the extension of coverage beyond that specifically contained in the policy. We therefore hold that the subsequent insolvency of a liability insurer of a motorist involved in a collision with the insured's vehicle did not amount to a denial of coverage so as to provide coverage to an insured under the uninsured motorist provision of his policy.

Since the filing of briefs and subsequent to oral argument in the instant case, another division of this court has addressed itself to the same issue. In *Tab Washington, a minor, etc. v. Merit Mutual Insurance Company* (1972), 5 Ill.App.3d 742, 284 N.E.2d 304, the court, after analyzing the *Rose* decision, also reached an opposite result and held that the subsequent insolvency of the liability insurer did not constitute a denial of coverage. In *Washington,* the court found that insolvency was not a denial of coverage because plaintiff might eventually share in a *pro rata* distribution of assets available for creditors. The *Washington* court also found that denial of coverage could not be equated with failure of coverage, and that the term connoted an affirmative act upon the part of the insurer.

Accordingly, the order of the circuit court finding that coverage was afforded to plaintiff and directing defendant to submit to arbitration is reversed, and judgment is hereby entered in favor of defendant.

Order reversed.

McGLOON, P. J., and DEMPSEY, J., concur.