(No. 45279.—

JOSEPH N. KASZESKI, Individually and as Executor of the Estate of Florence Kaszeski, Appellant, v. THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, Appellee.

*Opinion filed May 21, 1973.*

ALLEN H. MEYER, of Chicago, for appellant.

CLAUSEN, HIRCH, MILLER & GORMAN, of Chicago (FREDRIC J. GROSSMAN and JAMES T. FERRINI, of counsel), for appellee.

FRANK P. KRONENBERG, of Chicago, for *amicus curiae.*

MR. JUSTICE SCHAEFER delivered the opinion of the court:

This case is here upon leave granted to appeal from a decision of the Appellate Court, First District. 6 Ill. App. 3d 198.

The facts were thus stated in the opinion of the appellate court:

"On August 26, 1964, plaintiff's decedent, Florence Kaszeski, was a passenger in an automobile driven by plaintiff, which was then involved in a collision with an automobile driven by Thomas Mikus, the alleged tort-feasor. At the time of the accident, Mikus carried a valid policy of liability insurance issued by Progressive General Insurance Company. Subsequent to the accident in question, Progressive became insolvent.

Defendant had issued an automobile liability policy to plaintiff's decedent which was in effect on the date of the accident in question. The policy contained a provision that defendant would pay plaintiff for damages caused by an owner or operator of an uninsured automobile. The policy defined an uninsured automobile as one on which there was no liability insurance applicable at the time of the accident, or as an automobile on which there was applicable liability insurance in effect, but that the company writing the same denies coverage. The trial court found that the subsequent insolvency of Progressive amounted to a denial of coverage to plaintiff and ordered defendant to submit to arbitration to determine the extent of its liability, if any." 6 Ill. App. 3d at 199.

The appellate court reversed the judgment for the plaintiff and held that the defendant is not liable on its policy.

The policy defined an uninsured automobile to include "an automobile *** with respect to the ownership,

maintenance or use of which there is \*\*\* no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder \*\*\* ."

The parties have discussed several opinions of the appellate court that have been concerned with the effect of the insolvency of an insurance company upon the status of its policy holder as an uninsured motorist. In *Dreher v. Aetna Casualty & Surety Co. (1967), 83 Ill. App. 2d 141,* liability was denied when the tort-feasor's insurer became insolvent after the accident. The policy in that case, however, referred only to the first of the alternatives contained in the present policy, and did not mention the second alternative, denial of coverage. The court pointed out the difference, saying: "To be distinguished from the present situation are the cases where either by policy or statute the definition of uninsured motorist includes the situation where the insurance company has denied coverage." (83 Ill. App. 2d at 145.) *Preferred Risk Mutual Ins. Co. v. Glenzer (1970), 127 Ill. App. 2d 142,* involved an identical policy provision, and the court followed *Dreher,* saying: "The date of the accident is the critical time for determination of the coverage issue \*\*\*." 127 Ill. App. 2d at 144.

In *Illinois National Ins. Co. v. Rose (1968), 93 Ill. App. 2d 329,* the court was directly confronted with the issue involved in this case. Since there was no controlling Illinois decision, the court analyzed the decisions of other States and concluded: "Thus in Virginia, South Carolina, California and Pennsylvania, the only states in which it appears that the question has been decided under circumstances similar to those in the instant case, it has been determined that the subsequent insolvency of the liability

carrier is a denial of coverage as the term is used in an uninsured motorist provision. The reasoning employed is that the insured's rights, with respect to the protection which the liability carrier has agreed to provide, are just as effectively denied whether the insurer's conduct be voluntary or involuntary. With this reasoning we must agree." 93 Ill. App. 2d at 332.

Thereafter, in *Washington v. Merit Mutual Ins. Co. (1972), 5 Ill. App. 3d 742,* and in the present case, two separate divisions of the appellate court for the first district refused to follow the *Rose* case. We are of the opinion that they were in error in so doing.

In *Washington* the court asserted its belief that "the *Rose* decision failed to consider a number of significant features of Illinois law which bring us to the opposite result." (5 Ill. App. 3d at 744.) The first of those features is the fact that policy holders and other creditors of an insolvent insurance company are entitled to a *pro rata* distribution of its assets. "The *pro rata* distribution of assets may produce less than full satisfaction of the claim depending on the amount of claims filed, the extent of the coverage outstanding, and the liquidation value of the company's assets. Yet less than full satisfaction cannot be deemed an absolute denial, as is contemplated by the agreement between the parties, especially as of the date of the liquidation order, since at that time nothing other than a guess can be made as to ultimate recovery." (5 Ill. App. 3d at 745.) This feature is not peculiar to Illinois law, nor is it unique in any way. It is common to all liquidations, and we find it impossible to believe that the chance that some portion of a claim might ultimately be recovered in the course of the liquidation of an insolvent insurance company was overlooked by the court which decided the *Rose* case. The decision in the *Rose* case was not "bottomed," as the insurance company asserts, "upon a misunderstanding of the nature of insolvency."

The second feature of Illinois law relied upon in the

*Washington* case is apparently the possibility that "a court order directing the take-over of an insolvent firm by the Director of Insurance might sometimes *favorably* affect the claim of a plaintiff and possibly result in full satisfaction of his claim, if the Director is able to rehabilitate an otherwise failing company." (5 Ill. App. 3d at 745 n.3.) The possibility of a truly "favorable" result ensuing from the insolvency of an insurance company against which one has a claim is difficult for us to envision. The prospect that a valid claim may, at some indefinite future date, be satisfied in full is hardly to be characterized as a favorable one.

In *Washington* the court also took the position that a denial of coverage requires an affirmative act, saying: " 'denies coverage,' as we understand it, connotes an affirmative act such as the rejection of a policy holder as an insured, or the assertion that a particular type of accident is not covered by plaintiff's policy, that the insured has failed to cooperate, etc. See *Michigan Mutual Liability Co. v. Pokerwinski, 8 Mich. App. 475, 154 N.W.2d 609.* " (5 Ill. App. 3d at 746.) The position that an affirmative act is required in order to constitute a denial of coverage has been generally rejected, as was pointed out in the *Rose* case. (See the cases collected in 26 A.L.R.3d at 904.) The *Pokerwinski* case is no longer followed in Michigan. See *Winans v. Hartford Accident Indemnity Co. (1970), 25 Mich. App. 75, 181 N.W.2d 17.*

In the present case, as in the *Washington* case, the appellate court did not discuss the decisions of other courts which were relied upon in the *Rose* case. Instead, it relied upon its interpretation of the words of the policy, "denies coverage," and because it found those words to be plain and unambiguous, it denied liability. This accords with the approach of the insurance company: "An insurer has a right to limit coverage on a policy it issues and when it has done so, the plain language of the limitation must be effectuated." This approach was not inappropriate when

an insurance company was free to include or not to include an uninsured motorist clause in its policies. It was then also free to define the term "uninsured automobile" as it saw fit.

But that freedom came to an end in 1963, when the legislature prohibited the issuance of any motor vehicle insurance policy "unless coverage is provided therein \*\*\* for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles \*\*\*." (Ill. Rev. Stat. 1963, ch. 73, par. 755a.) After this statute became effective, the question ceased to be what each insurance company might decide to include within its definition of the terms "uninsured motor vehicle" and "hit and run motor vehicle." As we stated in *Smiley v. Estate of Toney (1969), 44 Ill.2d 127, 130,* "We are not persuaded that the policy definition of an 'uninsured vehicle,' if it is unambiguous, must always control the application of the statute. The statutory coverage is mandatory, and it may not be whittled away by an unduly restrictive definition."

The dominant words in determining the liability of the company in this case, therefore, are the words of the statute, "uninsured motor vehicle," and not the words "denies coverage" or any other restrictive words which an insurance company may place in its policy to limit the protection which the legislature has required it to provide.

The words of the statute are to be interpreted in terms of the purpose of the General Assembly in requiring mandatory coverage. So interpreted, a motorist who is not covered by insurance is an "uninsured motorist," and it is immaterial whether insurance coverage never existed or whether it once existed but has since been removed. Similarly, it is immaterial whether the insurance coverage has been removed by the voluntary act of the insurance company or by its involuntary insolvency. The effect upon

the person whom the legislature sought to protect is the same.

We conclude, therefore, that the trial court correctly entered judgment for the plaintiff and that the appellate court erroneously reversed that judgment. Our conclusion is not affected by the 1967 amendment to section 143a of the Insurance Code, which specifically defined "uninsured motor vehicle" to include "a motor vehicle where on, prior to or after the accident date the liability insurer thereof is unable to make payment *** by reason of insolvency on or after the accident date." That amendment contained the following provision: "This amendatory Act of 1967 shall not be construed to terminate or reduce any insurance coverage or any right of any party under this Act in effect prior to the effective date of this amendatory Act of 1967." (Ill. Rev. Stat. 1967, ch. 73, par. 755a.) Numerous cases were pending in the trial and reviewing courts when the 1967 amendment was proposed and enacted, and we think that the legislature clearly expressed its intention that the amendment did not bar a final judicial determination of preexisting law.

The judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed; circuit court affirmed.*