FOURTH DIVISION

FILED: 05/10/01

No. 1-00-2740

IN RE THE LIQUIDATION OF PINE TOP INSURANCE )  Appeal from the

COMPANY, )  Circuit Court of

)  Cook County.

NATHANIEL S. SHAPO, Director of Insurance of )

the State of Illinois, as Liquidator of )

Pine Top Insurance Company, )

)

Respondent-Appellee, )

)

v. )

)

ESTATE OF MARYBETH DUNCAVAGE, DECEASED, )  Honorable

)  Robert V. Boharic

Petitioner-Appellant. )  Judge Presiding.

JUSTICE HOFFMAN delivered the opinion of the court:

The Estate of Mary Beth Duncavage (Estate) appeals from a circuit court order denying its petition for post-allowance interest on its claim against Pine Top Insurance Company (Pine Top) in the instant liquidation proceedings.  For the reasons which follow, we affirm.

In June 1984, the Estate filed a multi-count complaint against the owner of an apartment building in which Mary Beth Duncavage was criminally assaulted and killed.
  The building owner was covered under an excess liability umbrella insurance policy issued by Pine Top.  During the pendency of that suit, the Director of Insurance of the State of Illinois (Director)
(footnote: 1) instituted the instant liquidation proceeding against Pine Top pursuant to Article XIII of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, pars. 799-833, now 215 ILCS 5/187-221
 (West 1998)).  On January 16, 1987, the circuit court entered an order finding Pine Top to be insolvent, appointing the Director as liquidator, and setting January 17, 1988, as a bar date for filing proofs of claim.

Section 209(6) of the Insurance Code provides that, when a liquidation order has been entered against an insurance company, any person who has a cause of action against an insured of that company under a policy issued by the company shall have the right to file a claim in the liquidation proceedings.  Ill. Rev. Stat. 1981, ch. 73, par. 821, now 215 ILCS 5/209(6) (West 1998).  On October 26, 1987, the Estate filed a proof of claim for $2 million, the liability limit of the policy involved, with the Director.  Thereafter, the Illinois Insurance Guaranty Fund paid the Estate $150,000 on its claim in accordance with the provisions of the Illinois Insurance Guaranty Fund Act (Ill. Rev. Stat. 1987, ch. 73, par. 1065.82 
et
 
seq
., now 215 ILCS 5/532 
et
 
seq
. (West 1998)). On January 15, 1993, the circuit court approved the Estate's claim in the sum of $1.85 million, which represented the $2 million claim less the $150,000 payment from the Guaranty Fund.  The Director appealed the circuit court's order allowing the claim, and this court affirmed.  
In re the Liquidation of Pine Top Insurance Co.
, 266 Ill. App. 3d 99, 639 N.E.2d 168 (1994).

At the time that the Estate's claim was allowed, it was categorized as a priority level (c) claim under section 205(1) of the Illinois Insurance Code (Insurance Code).  215 ILCS 5/205(1)(c) (West 1992).  Section 205(1) has since been amended such that the claims formerly designated as priority level (c) have been redesignated as priority level (d).  215 ILCS 5/205(1)(d) (West 1998).  The parties agree that the amendment accomplishing this change is not relevant to these proceedings and have, throughout their briefs, referred to the claims falling within this designation as priority level (d) claims.  We will do the same.

On April 3, 1995, the Director appeared before the trial court on his application for an order authorizing him to pay a 50% first dividend on all claims which had then been allowed at priority level (d).  On April 5, 1995, the trial court entered a written order authorizing the Director to make the requested dividend payments.  The order stated, in part: "The payment of a dividend on an allowed claim will constitute a release by the payee of fifty percent (50%) of Pine Top's obligations on the allowed claim."  Pursuant to the trial court's order, on May 12, 1995, the Director paid the Estate $925,000, or one half of the principal amount of its $1.85 million claim against Pine Top.

The next event relevant to this appeal took place on October 13, 1999, when the Director filed an application for an order authorizing him to pay a second 50% dividend on the allowed priority level (d) claims as to which a first dividend payment had been made and to pay a 100% dividend with respect to any claims that might be allowed in the future at priority level (d).  The Director's application contained proposed terms of the second dividend payment, one of which was that said payment would "constitute a full and final settlement of Pine Top's obligations on the underlying claim."  On October 27, 1999, the Director appeared before the trial court on its application.  The Estate appeared and requested leave to file written objections to the application.  The trial court granted leave, and the Estate filed its written objections the following day.  It did not object to the payment of the second dividend but did object to such payment being deemed a "final" payment as to its priority level (d) claim.  The Estate asserted that it was entitled to interest on its claim, pursuant to section 2-1303 of the Code of Civil Procedure (735 ILCS 5/2-1303 (West 1998)), from the date the claim was allowed to the date the claim was paid.  Such interest, the Estate argued, must be paid at the same priority level as the claim itself; namely, priority level (d).

On November 16, 1999, the trial court entered an order stating that it would treat the Estate's written objections as a petition for the payment of interest on its allowed claim and setting a briefing schedule on that petition.  On the same date, the trial court entered a second order requiring the Director to pay, on or before January 15, 2000, the remaining dividend payments on allowed priority level (d) claims.  That order stated, in part, that such payment would "constitute full and final satisfaction of Pine Top's obligations with respect to the allowed amount of the claim" but would not determine the claimants' rights, if any, to interest accruing on their claims after the date of liquidation.

On December 15, 1999, the Estate filed a petition for revival of judgment with respect to the $1.85 million claim allowed on January 15, 1993.  In its petition, the Estate acknowledged that the Director had paid $925,000 of the principal judgment amount on May 12, 1995, but asserted that there remained due "the sum of $371,317.81 in interest from January 16, 1993[,] to May 12, 1995, plus $925,000 in principal, with interest on $925,000 at the rate of 9% per annum from May 13, 1995."

On January 3, 2000, the Estate received a check for $925,000, representing the second half of the $1.85 million principal amount of its allowed claim, from the Director.  Thereafter, it filed an amended petition for revival of judgment, acknowledging receipt of the second principal payment.  In the amended petition, the Estate asserted that there remained due on the judgment "the sum of $371,317.81 in post-judgment interest from January 16, 1993[,] to May 12, 1995, plus $386,599.32 in post-judgment interest from May 13, 1995[,] to January 3, 2000[,] at the rate of 9% per annum from January 15, 1993."

By way of written order dated July 26, 2000, the trial court denied the Estate's petition for post-allowance interest on its claim at priority level (d).  In a separate order dated that same day, the trial court dismissed as moot the Estate's amended petition to revive judgment.  The Estate now appeals both of these orders pursuant to Supreme Court Rule 304(b)(2), which authorizes an appeal from a judgment or order entered in the administration of a liquidation which finally determines the rights or status of a party and which is not appealable pursuant to Supreme Court Rule 307(a).  155 Ill. 2d R. 304(b)(2).

On appeal, the Estate argues that the trial court erred in denying its petition for an award of post-allowance interest at the same priority level as its claim.  Before turning to the merits of the issue, we must address the Director's contention that the Estate waived any claim to post-allowance interest by failing to raise its claim at the time the first dividend was paid.  As stated above, on April 3, 1995, the Director appeared before the trial court on his petition for authorization to make a 50% first dividend payment on all claims which had, to that date, been allowed at priority level (d).   The Estate objected to the language of the proposed order which the Director had prepared.  Specifically, the Estate objected to language stating that the payment constituted "a settlement of fifty percent", the objection apparently being that the language might suggest that each creditor had accepted the payment as a settlement of its claim.  The Estate asserted that the payment being made was a "partial payment" rather than a "settlement."  The Director offered to substitute the word "release" for "settlement", and the trial court consented to this change.  The Estate's attorney first objected, stating that the word release had the same connotation as settlement, but then stated "That's fine."  On April 5, 1995, the trial court entered a written order authorizing the Director to make the requested dividend payments.  The order stated, in part: "The payment of a dividend on an allowed claim will constitute a release by the payee of fifty percent (50%) of Pine Top's obligations on the allowed claim."

The Director contends that, by failing to assert its right to post-allowance interest at that time and by failing to object to the April 5 order stating that the payment being made constituted 50% of "Pine Top's obligations on the allowed claim", the Estate waived any claim that Pine Top's "obligation" to it included post-allowance interest.  We disagree.  It is well-settled that nothing less than a tender of the full amount of judgment due, plus interest accrued to that point, will stop the accrual of interest under section 2-1303.  735 ILCS 5/2-1303 (West 1998); 
Yassin v. Certified Grocers of Illinois, Inc.
, 133 Ill. 2d 458, 462-64, 551 N.E.2d 1319 (1990); 
Halloran v. Dickerson
, 287 Ill. App. 3d 857, 862, 679 N.E.2d 774 (1997).  We cannot say that the Estate waived its claim to post-allowance interest by accepting a partial payment of the principal amount of its claim without demanding payment of the interest accrued to that date.  As the Estate points out, at the time that the first dividend payment was made, it was unclear whether there would be enough money to pay even the remaining principal on priority level (d) claims in full, let alone interest.  The Estate did raise an objection to the proposed language of the order, seeking to ensure that it would not be precluded from seeking additional amounts in the future.  We find no waiver occurred.  Having so determined, we now turn to the merits of the appeal.

There is no dispute with regard to the facts in the instant case.  Rather, the question presented for our resolution is one of law; namely, whether a claimant whose claim is allowed against an insolvent insurance company in liquidation proceedings under Article XIII of the Insurance Code is entitled to interest on its claim pursuant to section 2-1303 of the Code of Civil Procedure, payable at the same priority level as the claim itself.  As this is a matter of statutory construction, our review is 
de
 
novo
.  
Lucas v. Lakin
, 175 Ill. 2d 166, 171, 676 N.E.2d 637 (1997).

It is settled law that an award of interest is not recoverable absent a statute or agreement providing for it.  
Johnson v. Human Rights Comm'n
, 173 Ill. App. 3d 564, 568, 527 N.E.2d 883 (1988).  Section 12-109 of the Code of Civil Procedure provides that "[e]very judgment except those arising by operation of law from child support orders shall bear interest thereon as provided in Section 2-1303."  735 ILCS 5/12-109 (West 1998).    Section 2-1303 of the Code of Civil Procedure provides that "[j]udgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied ***" (735 ILCS 5/2-1303 (West 1998)).  It is upon these statutory provisions that the Estate relies to establish its right to the payment of post-allowance interest at priority level (d).

The parties, however, disagree as to whether section 2-1303 applies to proceedings conducted pursuant to Article XIII of the Insurance Code, which governs the liquidation of insolvent insurance carriers.  215 ILCS 5/187-221
 (West 1998).  Before turning to the parties' arguments on that issue, we will consider the threshold question of whether a circuit court order allowing a claim in proceedings to liquidate an insolvent insurance company constitutes a "judgment" within the meaning of section 2-1303.  We find the Illinois Supreme Court's decision in 
Mitchell v. Mayo
, 16 Ill. 83 (1854), to be dispositive.  In 
Mitchell
, the court was presented with the question of whether the circuit court's decision to allow a creditor's claim against a probate estate constituted a " 'judgment recovered before any court or magistrate authorized to enter up the same within this State' ", within the meaning of the post-judgment interest statute then in effect.  
Mitchell
, 16 Ill. at 84.  It answered the question affirmatively, reasoning that:

"It was a judgment of a court of competent jurisdiction in a judicial proceeding properly instituted and regularly pending before it. * * * It is true that no execution could be issued upon the judgment, but in this respect it is like a judgment of the circuit court against an administrator.  Upon such a judgment as upon this, no execution is awarded, but the judgment is ordered to be paid in the due course of administration."  
Mitchell
, 16 Ill. at 84.

Similarly, the order allowing the Estate's $1.85 million claim against Pine Top was entered by a court of competent jurisdiction during a judicial proceeding properly instituted and pending before it.  Accordingly, the trial court's order allowing the Estate's claim constitutes "a judgment[] recovered in any court" within the meaning of section 2-1303.

We now turn to the parties' arguments as to the applicability of section 2-1303 to proceedings under Article XIII.  In support of its argument that section 2-1303 applies to such proceedings, the Estate first relies on section 190(4) of the Insurance Code, which provides that "[t]he pleadings and proceedings insofar as not otherwise regulated by *** Article [XIII], shall be as in other civil proceedings."  215 ILCS 5/190(4) (West 1998).  The Estate contends that, by virtue of this language, the entire Code of Civil Procedure is rendered applicable to proceedings under Article XIII unless explicitly stated otherwise therein.  In support of this assertion, the Estate cites 
People ex rel. Baylor v. Bell Mutual Casualty Co.
, 54 Ill. 2d 433, 441, 298 N.E.2d 167 (1973), where our supreme court relied on section 190(4) in concluding that section 26.1 of the Civil Practice Act (now 735 ILCS 5/2-408 (West 1998)), governing intervention of parties, applied to proceedings under Article XIII, which contained no provision on that subject.  Noting that Article XIII contains no provision expressly providing for or prohibiting the payment of post-allowance interest, the Estate asserts that section 2-1303 of the Code of Civil Procedure applies.

The Director disputes the Estate's assertion that section 190(4) of the Insurance Code incorporates section 2-1303 of the Code of Civil Procedure into Article XIII.  He first notes, as did the trial court, that the remaining six subparagraphs of section 190 all pertain to the initial proceedings at which the trial court determines whether an insurance company should be placed into liquidation or rehabilitation.  See 215 ILCS 5/190(1)-(3), (5)-(7) (West 1998).   When subparagraph four is viewed in this context, the Director asserts, it is clear that it is meant to apply only to the initial hearing and does not apply to proceedings following the trial court's finding of insolvency and appointment of the Director as liquidator.

As the Estate correctly notes, though, our supreme court, in 
Bell Mutual
, relied on section 190(4) to apply section 26.1 of the Civil Practice Act in proceedings taking place well after the finding of insolvency and appointment of a liquidator.  See 
Bell Mutual
, 54 Ill. 2d at 433.  The Director correctly notes that its argument that section 190(4) applies only to the initial stage of liquidation proceedings was not raised or addressed in 
Bell Mutual
.  Nonetheless, implicit in the 
Bell Mutual
 decision is our supreme court's conclusion that section 190(4) renders at least certain provisions of the Code of Civil Procedure applicable in proceedings beyond the initial stage under Article XIII.  We decline the Director's invitation to find that 
Bell Mutual
 is "clearly erroneous" to the extent that it so holds.

The Director further contends that, even if section 190(4) applies to all phases of proceedings under Article XIII, it provides only that "the pleadings and proceedings, 
insofar as not otherwise regulated by this Article
, shall be as in other civil proceedings."  The Director contends that, although Article XIII does not contain a provision expressly prohibiting the payment of interest on a claim from the date it is allowed to the date it is paid, it does "otherwise regulate" distribution of assets in a manner that is inconsistent with the payment of post-allowance interest at the same priority level as the claim.

The Director sets forth two arguments in support of his contention that Article XIII implicitly prohibits the payment of post-allowance interest.  First, he  argues that Article XIII does not authorize him to pay post-allowance interest to claimants.  Section 210 of the Insurance Code, he notes, provides that "the Director shall pay all allowed claims in full accordance with the priorities set forth in Section 205."  215 ILCS 5/210 (West 1998).  Section 205 of the Insurance Code sets forth the priority for distribution of assets, designating the order in which the various classes of claims are to be paid.  215 ILCS 5/205 (West 1998).  Relying on section 210, the Director asserts that he is authorized only to pay "claims" and to pay them in the order specified in section 205.  The Director contends, however, that, even though "claim" is not defined in Article XIII, the term, as used therein, clearly does not include post-allowance interest.  In support of this assertion, he points to section 209 of Article XIII, which provides, in part: 

"A proof of claim shall consist of a written statement signed under oath setting forth the claim, the consideration for it, whether the claim is secured and, if so, how, what payments have been made on the claim, if any, and that the sum claimed is justly owing from the company."  215 ILCS 5/209(1) (West 1998).

The Director notes that, on the date a claim is filed and likewise on the date it is allowed, the "sum claimed" due and owing from the insolvent insurance company cannot include any post-allowance interest, as such interest would not yet have accrued and there could be no way of determining how much interest might accrue thereafter.  Accordingly, he concludes, the term "claim," as used in section 209, cannot encompass post-allowance interest.  Citing the general principle that the same word used in different parts of a statute should be accorded the same meaning in both places unless there is some indication that the legislature intended otherwise (
McMahan v. Industrial Comm'n
, 183 Ill. 2d 499, 513, 702 N.E.2d 545 (1998)), the Director asserts that the term claim, as used in section 210, also does not encompass post-allowance interest.  He concludes, therefore, that he is not authorized to pay post-allowance interest.

The Estate disputes the Director's contention that the term "claim"does not encompass post-allowance interest.  It contends that, once a claim is allowed, any interest accruing on the claim is part and parcel of and inseparable from the claim itself.  In support of this assertion, it relies on our supreme court's decision in 
Eddy v. People, to Use of Bloch
, 187 Ill. 304, 58 N.E. 397 (1900).

In 
Eddy
, the plaintiff was the holder of a sixth class preferred claim against a probate estate.  The claim was allowed in 1891, and the principal amount of the claim was paid in 1897.  The plaintiff sued, seeking to collect post-judgment interest on the claim.  
Eddy
, 187 Ill. at 305-06.  Our supreme court concluded that the plaintiff had the right to payment of the principal and interest on his sixth class claim before any payments were made to creditors of the seventh class, this despite the fact that such payment would leave an insufficient amount of money to pay the seventh class creditors in full.  The court reasoned that "the claim embraces the interest on it as well as the principal" and that the statutory interest is "a mere incident to the principal thing, attaching to it, and not separable from it for the purpose of classification."  
Eddy
, 187 Ill. at 307.  Having so addressed the merits of the issue, however, the court concluded that the plaintiff had waived his right to payment of interest by consenting to accept payment of the principal amount of his claim and to have the remainder of the estate assets paid to holders of seventh class claims.  
Eddy
, 187 Ill. at 307-09.

We agree with the Estate that the 
Eddy
 court's pronouncement that interest is a "mere incident" to the principal claim amount renders meritless the Director's argument that the word claim, by definition, can not include post-allowance interest.  We do not, however, agree with the Estate's further assertion that the 
Eddy
 court's pronouncement that post-allowance interest is payable on claims against a probate estate compels the conclusion that post-allowance interest is payable on claims against an insolvent insurance company in a liquidation proceeding.  There are definite similarities between proceedings to distribute the assets of a probate estate and those to distribute the assets of an insurance company.  The probate law, as it was in effect at the time 
Eddy
 was decided and in its current form, allows creditors of the decedent to file claims against the estate, provides a mechanism for claims to be reviewed and allowed or disallowed, and sets forth the order in which allowed claims should be paid.  Laws 1871-72, p. 93-95, §§60, 64, 68, 70, 71; 755 ILCS 5/18-1, 18-7, 18-10, 18-11, 18-13 (West 1998).  Similarly, Article XIII provides that the court shall set a date for the filing of claims against an insurance company, provides a mechanism for claims to be reviewed and allowed or disallowed, and sets forth the order in which allowed claims should be paid.  215 ILCS 5/205, 208-210 (West 1998).  There is, however, a significant difference between the two types of proceedings.

Section 194(a) of the Insurance Code provides that the rights of a creditor of an insolvent insurance company "shall be fixed as of the date of the entry of the Order directing liquidation or rehabilitation unless otherwise provided by Order of the Court."  215 ILCS 5/194(a) (West 1998).  Neither the probate law in effect at the time 
Eddy
 was decided (Laws 1871-72, p. 77 §1 
et
 
seq
.), nor the Probate Act of 1975 (755 ILCS 5/1-1 
et
 
seq
. (West 1998)) contains such a fixing provision.  Contrary to the Estate's assertion at oral arguments, a provision setting a deadline for the filing of claims is not a fixing provision.  It is upon section 194(a) that the Director bases his second argument that post-allowance interest is not payable on allowed claims against an insolvent insurance company being liquidated pursuant to Article XIII.   The Director argues that, on the date that the liquidation order is entered and the creditor's rights are fixed, the creditor has no right to collect post-judgment interest from the insolvent insurer as it has no judgment against the insurer.  The Director concludes, therefore, that a creditor has no right to collect post-allowance interest on its claim under the terms of Article XIII.

In response, the Estate asserts that, pursuant to section 194(a), it is only the creditor's rights which are fixed on the date the liquidation order is entered, not the amount of the creditor's claim.  It notes that, on January 15, 1993, the date the liquidation order was entered in this case, section 2-1303 of the Code of Civil Procedure was in effect.  Accordingly, the Estate contends, on that date, it had the statutory right to post-allowance interest on any judgment it obtained against Pine Top in the future.  We disagree.

We believe, rather, that the fixing provision is intended to stop the running of any debts, including post-judgment interest, against the insolvent insurer in order to give the liquidator an opportunity to marshal the insurer's assets and pay its debts.  We find support for our position in cases pertaining to Federal bankruptcy and equitable receivership proceedings, both of which are analogous to proceedings to liquidate an insolvent insurance company.  Because the Insurance Code was enacted in 1937, courts have found the Bankruptcy Act of 1898 more germane to its interpretation than the Bankruptcy Code of 1978.  
Pine Top Insurance Co. v. Bank of America National Trust & Savings Ass'n
, 969 F. 2d 321, 324 (7
th
 Cir. 1992).  The United States Supreme Court has consistently held that, in equitable receivership proceedings and proceedings under the Bankruptcy Act of 1898, claimants are not entitled to the payment of interest accruing after the date the receiver was appointed or the bankruptcy petition was filed.  In 
Vanston Bondholders Protective Committee v. Green
, 329 U.S. 156, 163, 91 L. Ed. 162, 166, 67 S. Ct. 237, 240 (1946), the Court stated that "[t]he general rule in bankruptcy and in equity receivership has been that interest on the debtors' obligations ceases to accrue at the beginning of the proceedings."  In 
Sexton, as Trustee in Bankruptcy of Kessler & Co. v. Dreyfus
, 219 U.S. 339, 344, 55 L. Ed. 244, 245, 31 S. Ct.256, 257 (1911), the Court explained:

"For more than a century and a half the theory of the English bankrupt system has been that 
everything stops at a certain date
. *** [T]he rule was laid down not because of the words of the statute but as a fundamental principle.  We take our bankruptcy system from England, and we naturally assume that the fundamental principles upon which it was administered were adopted by us when we copied the system ***." (Emphasis added).

The Court has offered several policy reasons for the rule against allowing the payment of any interest accruing after the filing of a bankruptcy petition or the appointment of a receiver.  These reasons include: 1) that the delay in paying the claimants the amount owed them is a necessary incident to the settlement of the estate and that, as such, the accrual of interest as a penalty for nonpayment is not appropriate; 2) that considerable administrative  inconvenience would be caused by requiring continuous recomputation of interest and, correspondingly, continuous recomputation of claims; and 3) that different creditors would unfairly experience gain or loss based on the dates on which their claims were paid.  See  
Vanston Committee
, 329 U.S. at 163-64, 91 L. Ed. 2d at 166-67, 67 S. Ct. at 240; 
Nicholas, Trustee v. United States
, 384 U.S. 678, 689, 16 L. Ed. 2d 853, 862, 86 S. Ct. 1674, 1682 (1966).

An exception to the common law rule against post-petition or post-receivership interest developed to allow the payment of interest where the debtor proved to be solvent.  
United States v. Ron Pair Enterprises, Inc.
, 489 U.S. 235, 246, 103 L. Ed. 2d 290, 301, 109 S. Ct.1026, 1033 (1989); 
Ohio Savings Bank & Trust Co. v. Willys Corp.
, 8 F.2d 463, 468 (2d Cir. 1925).  This exception was ultimately codified, as the current bankruptcy law provides for payment, at the last priority level before money is returned to the debtor, of interest accruing "from the date of the filing of the petition" on any claim paid at a higher priority level.  See 11 U.S.C. §726(a) (West 2000).  Thus, although post-petition interest is currently allowed on claims filed in a bankruptcy proceeding, it is not paid at the same priority level as the claim itself.  Rather, it is subordinated and paid after the principal amount of all claims have been paid but before any money is returned to the debtor.  This exception for solvent estates is not applicable in the instant case, however, as neither party contests the fact that Pine Top is insolvent.

The same policy reasons cited above with regard to bankruptcy and equitable receivership cases support a finding that post-allowance interest should not be allowed on claims against an insolvent insurance company in a liquidation proceeding.  First, the liquidator is not at liberty to pay each claim at the time it is allowed.  There are several reasons for this.  The liquidator must pay claims pursuant to the priority schedule set forth in section 205 of the Insurance Code.  The liquidator cannot, for example, pay any allowed priority level (d) claims until all claims at priority levels (a) through (c) have been reviewed and those claims allowed have been paid.  Further, when the assets of an insurance company being liquidated are insufficient to pay all creditors in full, creditors shall be paid on a 
pro
 
rata
 basis.  
Washington v. Merit Mutual Insurance Co.
, 5 Ill. App. 3d 742, 745, 284 N.E.2d 304 (1972).  Accordingly, even after all allowed priority level (a) through (c) claims have been paid, the liquidator cannot pay an allowed priority level (d) claim unless and until it has reviewed all priority level (d) claims, or at least a sufficient number of claims such that he can determine whether there will be sufficient assets to pay all claims allowed at that level in full or whether the allowed claims must be paid on a 
pro
 
rata
 basis.  Accordingly, as the liquidator cannot, for reasons beyond his control, pay claims on the date on which they are allowed, it would be unfair to award post-allowance interest as a penalty for non-payment.

Another policy reason weighing against the payment of post-allowance interest with the payment of the principal amount of an allowed claim is that such a practice would require constant recomputation of interest and claims, causing considerable administrative inconvenience and delay.  Finally, we note that allowing interest to run from the date a claim is allowed until the date it is paid will benefit certain creditors and harm others based on the dates that both such events, over which the claimants largely have no control, occur.  As such, a claimant with a large claim allowed early on in lengthy proceedings such as these could deplete the assets of the estate not just to the detriment of creditors at a lower priority level but also of creditors at the same priority level.

Before concluding our analysis, we must address the Estate's argument that this court's decision in 
Lucas v. Illinois Insurance Guaranty Fund
, 67 Ill. App. 3d 398, 384 N.E.2d 938 (1978), requires a finding that post-allowance interest must be paid under Article XIII.  In 
Lucas
, the plaintiffs each obtained judgments against a taxicab company for injuries sustained in separate automobile accidents.  The taxicab company's insurance carrier, however, had been adjudged insolvent.  The plaintiffs then obtained a judgment against the Illinois Insurance Guaranty Fund in accordance with the provisions of the Illinois Insurance Guaranty Fund Act, contained in Article XXXIV of the Insurance Code (Ill. Rev. Stat. 1977, ch. 73, par. 1065.82 
et
 
seq
., now 215 ILCS 5/532 
et
 
seq
. (West 1998)).  
Lucas
, 67 Ill. App. 3d at 399.  The plaintiffs subsequently filed a petition seeking the payment of post-judgment interest on the judgment against the Guaranty Fund pursuant to section 3 of the Interest Act (Ill. Rev. Stat. 1977, ch. 74, par. 3), a predecessor to section 2-1303.  The 
Lucas
 court found that the plaintiffs were entitled to interest, noting that section 3 of the Interest Act was "positive and self-executing" and that nothing in that section or in the Insurance Guaranty Fund Act, pursuant to which the judgment was entered, exempted judgments against the Guaranty Fund from payment of post-judgment interest.  
Lucas
, 67 Ill. App. 3d at 400-01.

The facts in 
Lucas
 are clearly distinguishable from those in the instant case.  The 
Lucas
 judgment was not, as the Estate contends, a claim allowed in liquidation proceedings.  Rather, it was a judgment against the Guaranty Fund, a body which, pursuant to the Guaranty Fund Act, makes certain statutorily mandated payments on unpaid claims within the coverage of an insurance policy issued by a company which has been declared insolvent.  215 ILCS 5/534.3, 5/537.2 (West 1998).  The Guaranty Fund is comprised of companies licensed to transact insurance business in the state of Illinois (215 ILCS 5/534.5, 5/535 (West 1998)), and it assesses these member companies amounts necessary to pay its obligations (215 ILCS 5/537.6 (West 1998)).  It is true that the Guaranty Fund is allowed to recover its expenses from the insolvent insurance company at the same priority level as the liquidator's expenses.  215 ILCS 5/205, 5/545 (West 1998).  Nonetheless, judgments against the Guaranty Fund are not paid pursuant to Article XIII of the Insurance Code and are not paid out of the assets of the insolvent company.  Unlike the liquidator in Article XIII proceedings, the Guaranty Fund is not prohibited from paying a judgment as soon as it is entered.  For these reasons, we find 
Lucas
 to be inapposite to the instant case.

For the reasons stated above, we conclude that a claimant against an insolvent insurance company in liquidation proceedings is not entitled to the payment of post-allowance interest at the same priority level as its claim.  We offer no opinion as to whether post-allowance interest should be paid on a claim against a solvent insurance carrier in a proceeding pursuant to Article XIII as that issue is not before us.  We note that, even if the Estate is correct that it is entitled to the payment of post-allowance interest against Pine Top pursuant to section 2-1303, we would, nonetheless, find that the circuit court properly denied the Estate's petition, which sought payment of the interest at the same priority level as the claim itself.

For the reasons stated above, we find that the trial court properly denied the Estate's petition for post-allowance interest at priority level (d).  Further, as the Estate is not entitled to the payment of post-allowance interest, we find the trial court properly dismissed its petition to revive the $1.85 million claim, the principal of which had been paid in full.  Accordingly, we affirm the judgment of the circuit court.

Affirmed.

HARTMAN, P.J., and BARTH, J., concur.

FOOTNOTES
1: 
Different individuals served as the Director of Insurance at various times during the pendency of the liquidation proceedings.  The term Director shall be used to refer to the individual holding the position at the time the action referred to was taken.